FILED

2009 Feb-11  AM 02:43
U.S. DISTRICT COURT
N.D. OF ALABAMA



# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA

| | | |
|---|---|---|
| BALCH & BINGHAM LLP, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civ. No.:  CV-08-HGD-2281-S |
| | ) | |
| U.S. COMMODITY FUTURES | ) | |
| TRADING COMMISSION, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT COMMODITY FUTURES TRADING COMMISSION'S
MOTION TO DISMISS FOR FAILURE TO EXHAUST
ADMINISTRATIVE REMEDIES**

Exhibit 2   Dynegy Detailed Written Justification of FOIA Confidential Treatment
Request, dated 13 Oct 2008.

*Same info. requested in FOIA 08-0141*



**pillsbury**

Pillsbury Winthrop Shaw Pittman LLP
50 Fremont Street | San Francisco, CA 94105-2228 | tel 415.983.1000 | fax 415.983.1200

MAILING ADDRESS: P. O. Box 7880 | San Francisco, CA 94120-7880

Michael J. Kass
tel 415.983.1462
michael.kass@pillsburylaw.com

October 13, 2008

**VIA ELECTRONIC MAIL (OCT. 13, 2008); VIA COURIER (OCT. 14, 2008)**

Assistant Secretary of the Commission for FOIA
Attention: Stacy Easter, FOIA Paralegal Specialist
Privacy and Sunshine Acts Compliance
Commodity Futures Trading Commission
Three Lafayette Centre, 8th Floor
1155 21st Street, NW
Washington, DC 20581

Re:  Detailed Written Justification of FOIA Confidential Treatment Request,
FOIA No. 08-0120

Dear Sir/Madam:

On September 18, 2008, Dynegy Inc. received notice from the Commission's Office of
General Counsel that an initial determination to deny a Freedom of Information Act
("FOIA") request for access to documents relating to the proceeding entitled In the Matter
of Dynegy Marketing & Trade and West Coast Power LLC, Docket No. 03-03 has been
appealed. The request and appeal came from Greeberg Traurig, the same law firm which
unsuccessfully appealed a denial of their last FOIA request seeking this same information.
On behalf of Dynegy Inc. and Dynegy Marketing & Trade (collectively, "Dynegy"), we
submit this written justification because the requested information remains protected from
disclosure.

Factual Background

Dynegy entered into a settlement with the Commission in December 2002, which required
Dynegy to cooperate with the Commission in any investigation, civil litigation, or

www.pillsburylaw.com                                                    701292789v1

# pillsbury

administrative matter relating to the subject matter of the proceeding.[1]  In connection with the investigation, Dynegy produced various documents in response to *subpoenas duces tecum* issued by the Commission during 2002 and 2003, including non-public data and information relating to Dynegy's market positions and transactions, customer names, personnel files and other similar materials regarding Dynegy employees, as well as confidential business information of a sensitive commercial nature and materials that were subject to attorney-client privilege and/or attorney work-product protections.  A portion of those materials consisted of confidential documents that Dynegy had produced to the United States Attorney for the Southern District of Texas as part of an ongoing criminal investigation and to the Federal Energy Regulatory Commission, both of which were coordinating with the Commission's investigation as part of the federal Corporate Fraud Task Force (the "Task Force").

In August 2003, Greenberg Traurig submitted a FOIA request (FOIA No. 03-02228) to obtain documents relating to the Dynegy investigation.  Greenberg Traurig represents Multiut Corporation, which is seeking these documents because it is involved in two pending lawsuits with Dynegy relating to sales of natural gas.  After their first FOIA request was denied, Greenberg Traurig sought administrative review.  The Commission affirmed the denial, and adopted the staff's decision to withhold the responsive documents pursuant to FOIA exemptions (b)(3), (b)(5) and (b)(7).  *See* Letter from Susan Nathan, Assistant General Counsel, to Greenberg Traurig, dated February 11, 2004, attached hereto as "Exhibit A" ("Prior Opinion").

Greenberg Traurig's second FOIA request to the Commission seeks the same information to which it was previously denied access.  Because the essential facts and law underlying the Commission's Prior Opinion remain unchanged, the requested documents should remain protected.

---

[1]  *See In re Matter of Dynegy Marketing & Trade and West Coast Power LLC,* CFTC Docket No. 03-03 (Dec. 18, 2002).

# pillsbury

Assistant Secretary of the Commission for FOIA
Privacy and Sunshine Acts Compliance
October 13, 2008
Page 3

The Commission's Prior Opinion Still Applies.

The Commission denied Greenberg Traurig's last FOIA request on the grounds that all of
the information sought was protected by FOIA exemptions (b)(3), (b)(7), and/or (b)(5).
The same exemptions apply to the present request.

1.     FOIA Exemption (b)(3) Applies to Dynegy Investigation Documents.

With respect to FOIA exemption (b)(3), the Commission previously held that it was
prohibited from disclosing Dynegy's responsive financial and trading records pursuant to
Section 8(a) of the Commodity Exchange Act, 7 U.S.C. § 12, which "specifically
prohibits publication by the Commission of data and information that would separately
disclose the business transactions and market positions of any person, as well as the names
of customers." Prior Opinion at 2.[2]   This same exemption still applies under the present
circumstances.

2.     FOIA Exemption (b)(7) Applies to Dynegy Investigation Documents.

The Commission further held that FOIA exemption (b)(7) applied, and that all of the
responsive documents were properly withheld on this basis.  5 U.S.C § 552(b)(7).  The
Commission noted that FOIA exemption (b)(7) protects from disclosure information
compiled for law enforcement when disclosure:

> "could reasonably be expected to interfere with pending
> enforcement proceedings ((b)(7)(A)); could reasonably be expected
> to constitute an unwarranted invasion of privacy ((b)(7)(C); or
> would disclose investigative techniques or procedures ((b)(7)(E))."

---

[2] FOIA exemption (b)(3) "protects matters 'specifically exempted from disclosure by statute…provided
that such statute…(B) establishes particular criteria for withholding or refers to particular types of
material to be withheld.'" 5 U.S.C § 552(b)(3).  Section 8(a) of the Commodity Exchange Act has been
held to satisfy subpart B of FOIA exemption (b)(3).  *Hunt v. Commodity Futures Trading Commission*,
484 F. Supp. 47, 49 (D.D.C. 1979).

# pillsbury

Assistant Secretary of the Commission for FOIA
Privacy and Sunshine Acts Compliance
October 13, 2008
Page 4

Prior Opinion at 3.  Noting that premature disclosure of Dynegy investigation documents could reasonably be expected to interfere with pending law enforcement actions, the Commission held that "exemption (b)(7)(A) is fully applicable to witness interview summaries, depositions or summaries of depositions, financial records and trading records, as well as to memoranda and attorney notes related to the investigation." *Id.* The Prior Opinion recognized that Dynegy had produced to the Commission a number of documents it had also produced to the U.S. Attorney for the Southern District of Texas (which documents were also produced to the FERC as part of the Task Force).  Prior Opinion at 2.  The U.S. Attorney prosecuted one of Dynegy's former employees (*United States v. Michelle Valencia,* Docket No. H-03-0024) and the appeal from that prosecution remain pending.  *See United States v. Michelle Valencia,* U.S. Court of Appeals for the Fifth Circuit Docket No. 08-20546, attached hereto as "Exhibit B."  In 2003, when FERC contemplated release of Dynegy's confidential documents, the U.S. Attorney's office requested that such documents not be released, citing concerns regarding the criminal action.  FERC therefore withheld the documents.  *Fact Finding Investigation of Potential Manipulation of Electric and Natural Gas Prices,* 102 FERC ¶ 61,311, at 14 (2003), attached hereto as "Exhibit C."  Because law enforcement proceedings remain pending, exemption (b)(7)(A) applies with equal force today.[3]

In addition, observing that "FOIA traditionally has recognized strong privacy interests inherent in law enforcement records," the Prior Opinion independently held protected from disclosure under exemption (b)(7)(C) any portions of the investigative file "which would reveal subjects, witnesses and informants in enforcement investigations are categorically exempt from disclosure."  Prior Opinion at 3.  The Commission determined that, with respect to the Dynegy investigation, the identities of protected individuals were

---

[3]  Section (b)(7)(A) remains applicable because:  (1) the Commission received documents from Dynegy that were also provided to the U.S. Department of Justice; (2) the Valencia prosecution resulted from the Task Force investigation in which the Commission and the Department of Justice were cooperating; (3) Valencia has appealed her conviction; and (4) a conviction that has been appealed remains pending during the appeal process for purposes of exemption (b)7(A).  *See, e.g., Kansi v. U.S. Dept. of Justice,* 11 F.Supp.2d 42, 44 (D.D.C. 1998) (law enforcement action is still "pending" for purposes of exemption (b)7(A) when the case is on appeal).

# pillsbury

Assistant Secretary of the Commission for FOIA
Privacy and Sunshine Acts Compliance
October 13, 2008
Page 5

disclosed in the "witness interview summaries, depositions and deposition summaries, customer lists, *and throughout the withheld material.*" *Id.* (emphasis added).  Because the passage of time has not diminished the privacy interests in these law enforcement records, exemption (b)(7)(C) still applies.[4]

The Commission's Prior Opinion also held that internal memoranda, attorney notes, and summaries of witness interviews are protected under exemption (b)(7)(E), which protects from disclosure documents that reveal investigative techniques or procedures.  Prior Opinion at 3.  The Commission was clear that disclosing these documents would present a threat to the effectiveness of future Commission investigations.  *Id.*  Since exemption (b)(7)(E) is premised on how revealing investigatory practices harms future investigations, it necessarily continues to warrant denial of Greenberg Traurig's new request.[5]

3.　　FOIA Exemption 4 Applies to Dynegy's Attorney-Client Privileged and Work Product Protected Documents

Some of the documents Dynegy produced to the Commission and other members of the Task Force were protected by the attorney-client privilege and/or the work product doctrine (*e.g.*, correspondence from Dynegy's counsel discussing internal investigation interviews and summaries, and analyses prepared at the direction of counsel relating to trades and position summaries referred to in the Prior Opinion at 2).  As noted in the Prior Opinion, information which Dynegy provided that was not required pursuant to subpoenas is "entitled to categorical protection [under Exemption 4] when the agency is able to conclude that it is 'of a kind that the provider would not customarily release to the

---

[4]   Documents constituting personnel records of Dynegy's employees are also protected under FOIA exemption (b)(6), 5 U.S.C. § 552(b)(6), which prohibits disclosure of "personnel, medical files and other similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6).

[5]   The Prior Opinion also held that these documents were protected from disclosure under exemption (b)(5), which protects internal documents that are normally privileged or protected by the work product doctrine in the context of civil discovery.  Prior Opinion at 4.

# pillsbury

Assistant Secretary of the Commission for FOIA
Privacy and Sunshine Acts Compliance
October 13, 2008
Page 6

public.'" Prior Opinion at 5, quoting *Critical Mass Energy Project v. NRC*, 975 F.2d 871, 880 (D.D.C. Cir. 1992). Dynegy was not required to provide its attorney-client privileged and work product protected information in response to the Commission's subpoenas. Dynegy did so because, under the guidelines adopted by the Commission and other members of the Task Force, such disclosures were an important factor considered by the agencies in determining whether a corporation was cooperating in an investigation. Because Dynegy provided its privileged information to ensure that it would be deemed cooperative, and not because it was required to do so by law or subpoena, these particular disclosures are entitled to categorical protection by the Commission since Dynegy does not customarily release its privileged information to the public. *See, e.g., Miller, Anderson, Nash, Yerke & Wiener v. U.S. Dept. of Energy*, 499 F.Supp. 767, 771 (D.C.Or. 1980) (noting that "[i]t is hard to imagine a category of documents which more readily meet the aforementioned requirement [of a type not customarily released] than legal correspondence between an attorney and his client").

In fact, this very issue was recently addressed by the California Court of Appeal with respect to privileged and work product documents that Dynegy (and other energy companies) produced to the Commission and other members of the Task Force. In *Regents of the Univ. of Cal. v. Superior Court*, 165 Cal.App.4th 672, 683-685 (2008), the court upheld the trial court's determination that Dynegy and other defendants had not waived privilege when they disclosed privileged and work product protected documents to the Department of Justice and other members of the Task Force.[6] The court observed: "[B]ecause of the dramatic impact failure to cooperate might have on the corporations and

---

[6] The *Regents* court noted that the Department of Justice had adopted a policy under which, in determining whether it would indict a corporation, the department would consider the corporation's cooperation with the government. *Id.* at 676. Under the department's policy, one important indicia of a corporation's cooperation was the corporation's willingness to disclose documents protected by the attorney-client and attorney work product privileges when responding to subpoenas and requests for documents. The polices enunciated in the Department of Justice's Thompson Memorandum were not limited to the Department of Justice, but were applicable to all members of the Task Force, including the CFTC and FERC, and were specifically incorporated into the Task Force's first annual report. CORPORATE FRAUD TASK FORCE, FIRST YEAR REPORT TO THE PRESIDENT iii (2003), *available at* http://www.usdoj.gov.dag/cftf at Appendix 1.

# pillsbury

Assistant Secretary of the Commission for FOIA
Privacy and Sunshine Acts Compliance
October 13, 2008
Page 7

the absence of any cost-free redress, the trial court here correctly found that the defendants' cooperation with the government did not waive the attorney-client and attorney work product privileges." *Id.* at 684.

Greenberg Traurig's client, Multiut, presently has cases pending with Dynegy before two federal judges who will decide whether Multiut should get access to privileged and work product protected documents that Dynegy disclosed to the Commission and other members of the Task Force. The issues involved are similar to those considered by the *Regents* court. Multiut should not be allowed to use the FOIA process as an end run around judicially supervised civil discovery. *See Neely v. F.B.I.*, 208 F.3d 461, 464 (4th Cir. 2000) (citing *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 153 (1989) ("FOIA was not intended to supplement or displace rules of discovery"); *Mack v. Dep't of Navy*, 159 F. Supp. 2d 99, 109 (D.D.C. 2003) ("Congress never intended FOIA to serve as an alternate or supplemental means of discovery."); *McQueen v. United States*, 179 F.R.D. 522, 525 (S.D. Tex. 1998) ("FOIA was not intended to function as a private discovery tool . . . ."). In evaluating whether a request for information lies within the scope of a FOIA exemption, "a court must balance the public interest in disclosure against the interest Congress intended the [e]xemption to protect.'" *U.S. Dept. of Defense v. Federal Labor Relations*, 510 U.S. 487, 495 (1994); *see also Gilmore v. U.S. Dept. of Energy*, 4 F.Supp.2d 912, 922 (N.D.Cal.,1998). However, "the only relevant 'public interest in disclosure' to be weighed in this balance is the extent to which disclosure would serve the 'core purpose of the FOIA,' which is 'contribut[ing] significantly to public understanding of the operations or activities of the government.'" *Id.* Neither Greenberg Traurig, nor its client Multiut, is trying to understand the Commission's operations or activities -- they are seeking to gain an unfair advantage in private litigation.[7] Under Exemption 4, privileged and work product protected documents Dynegy disclosed to the Commission and other Task Force members, when such disclosures were not required by subpoenas, are entitled to categorical protection.

---

[7] Thus, Title 17 of the Code of Federal Regulations, section 145.9(d)(iv), provides that confidential treatment is appropriate when disclosure "would reveal investigatory records compiled for law enforcement purposes whose disclosure would deprive the submitter of a right to a fair trial or an impartial adjudication."

Assistant Secretary of the Commission for FOIA
Privacy and Sunshine Acts Compliance
October 13, 2008
Page 8


For all of the foregoing reasons, the Commission should uphold the initial determination and again deny Greenberg Traurig's request for documents relating to the Dynegy investigation.

Regards,

Michael J. Kass

cc:     Jason A. Buchman, Esq.

        Kate Dugan (FOIA Requester)
        Greenberg Traurig
        77 West Wacker Drive, Ste 2500
        Chicago, IL  60501

# EXHIBIT A



# U.S. COMMODITY FUTURES TRADING COMMISSION
Three Lafayette Centre
1155 21st Street, NW, Washington, DC 20581
Telephone: (202) 418-5120
Facsimile: (202) 418-5524
*www.cftc.gov*

Office of General Counsel

February 11, 2004

Ronald F. Labedz, Esq.
Greenberg Traurig
77 West Wacker Drive
Suite 2500
Chicago, Illinois  60601

Re:   Freedom of Information Act Appeal (FOIA No. 03-0228)

Dear Mr. Labedz:

This letter responds to your request for administrative review of the FOIA Compliance Office's October 7, 2003 denial of your request under the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA"), for materials referring or relating to allegations that Dynegy Marketing and Trade or Dynegy Inc. ("Dynegy") attempted to manipulate natural gas prices. This Office has reviewed the responsive documents, the arguments raised in your letter dated November 6, 2003, and the November 17, 2003 detailed written justification for confidential treatment submitted by counsel for Dynegy. For the reasons that follow, we have determined to affirm the staff's decision to withhold the responsive documents and to reverse the staff's grant of confidential treatment pursuant to FOIA exemption (b)(4) with respect to the Dynegy documents.

## Background

By letter dated October 7, 2003, the Commission's FOIA Compliance staff advised you that Commission staff had identified approximately 1456 pages of material responsive to your request and had determined to deny access pursuant to various FOIA exemptions. Your appeal was filed with this Office on November 6, 2003. Pursuant to Commission regulation 145.7(i)(6)(iii), we remanded the matter to the FOIA Compliance Office for a further search to assure that all relevant documents had been located. This search yielded 154 additional pages of material responsive to your request.

## Discussion

### The Responsive Documents

The responsive documents can be categorized broadly as follows:

- Transcripts of investigative testimony (approximately 559 pages)

- Division of Enforcement internal memoranda relating to investigation (approximately 72 pages)
- E-mail correspondence between or among Dynegy employees (approximately 238 pages)
- Dynegy blotter sheets, deal sheets and deal reports, deal confirmation materials, and position summaries (approximately 93 pages)
- Correspondence from Dynegy's counsel discussing or enclosing internal investigation interviews and interview summaries; disciplinary actions taken by Dynegy against traders; list of interviewees for internal investigation (approximately 145 pages)
- Materials relating to reporting of information to gas price-indexing publications (approximately 252 pages)
- Correspondence and materials forwarded to U.S. Attorney's Office relating to deal confirmation materials, blotter pages, position summaries (approximately 246 pages)
- FBI Form 302 report of interview (approximately 4 pages)

## FOIA Exemption (b)(3)

FOIA Exemption (b)(3), 5 U.S.C. § 552(b)(3), protects matters "specifically exempted from disclosure by statute. . .provided that such statute. . .(B) establishes particular criteria for withholding or refers to particular types of material to be withheld."[1]  Section 8(a) of the Commodity Exchange Act, 7 U.S.C. § 12, specifically prohibits publication by the Commission of data and information that would separately disclose the business transactions and market positions of any person, as well as the names of customers. The Commission is thus prohibited by section 8(a) of the Act from disclosing the Dynegy financial and trading records responsive to your request.

Section 8(a) further provides that the Commission may withhold any data or information concerning or obtained in connection with any pending investigation of any person. This Office has been advised by the Division of Enforcement that the Commission's investigation of Dynegy remains open. Because all 1610 pages of withheld material relates to or has been obtained in connecting with a pending investigation, all material relating to Dynegy was properly withheld by staff pursuant to FOIA exemption (b)(3).

## FOIA Exemption (b)(7)

Because release of the responsive material could reasonably be expected to interfere with prospective or pending law enforcement actions[2] arising from the Commission's Dynegy investigation, all 1610 pages are properly withheld under FOIA exemption (b)(7), which protects

---

[1] Section 8(a) of the Act satisfies subpart B of FOIA exemption (b)(3). *Hunt v. Commodity Futures Trading Commission*, 484 F.Supp. 47, 49 (D.D.C. 1979).

[2] The statutory phrase "law enforcement proceedings" has been interpreted broadly and includes "cases in which the agency has the initiative in bringing an enforcement action. *Mapother v. Department of Justice*, 3 F.3d 1533, 1540 (D.C. Cir. 1993).

from disclosure records or information compiled for law enforcement purposes to the extent that their production could reasonably be expected to interfere with pending enforcement proceedings ((b)(7)(A)); could reasonably be expected to constitute an unwarranted invasion of personal privacy ((b)(7)(C)); or would disclose investigative techniques or procedures ((b)(7)(E)).

Determining the applicability of exemption (b)(7)(A) requires a two-step analysis: (1) whether a law enforcement investigation is pending or prospective; and (2) whether release of the information could reasonably be expected to cause some articulable harm. *Manna v. Department of Justice*, 51 F.3d 1158, 1164 (3d Cir. 1994), *cert. denied*, 116 S.Ct. 477 (1995). The requisite showing of "articulable harm" is made when the agency shows that the "government's case in court—a concrete prospective law enforcement proceeding—would be harmed by the premature release of evidence or information," or when disclosure "would impede any necessary investigation prior to the proceeding." *NLRB v. Robbins Tire*, 437 U.S. 214, 232 (1978).

Premature disclosure of the material responsive to your request would harm potential administrative enforcement cases having their origins in the Commission's Dynegy investigation. *See New England Medical Center Hospital v. NLRB*, 548 F.2d 377, 380 (1st Cir. 1976); *Cucci v. DEA*, 871 F.Supp. 508, 512 (D.D.C. 1994). Release of this material would reveal the scope of Commission investigations as well as its determinations as to the quality, quantity or nature of evidence necessary to commence an enforcement action. Accordingly, it is our view that exemption (b)(7)(A) is fully applicable to witness interview summaries, depositions or summaries of depositions, financial records and trading records,[3] as well as to memoranda and attorney notes related to the investigation. Disclosure of information in the latter two categories would reveal critical insights into the Commission's legal considerations and strategy and would interfere with pending and prospective investigations.

Disclosure of internal memoranda and attorney notes, as well as summaries of witness interviews, also would reveal the Commission's investigatory techniques and procedures and thus would present a threat to the effectiveness of this and future investigations. Accordingly, documents in these categories are exempt from disclosure under FOIA exemption (b)(7)(E).

Identities of individuals with privacy interests appear in witness interview summaries, depositions and deposition summaries, customer lists, and throughout the withheld material. The FOIA traditionally has recognized strong privacy interests inherent in law enforcement records. The identities of any uncharged persons who are implicated in the Commission's investigations, as well as third party witnesses and Commission staff, are separately entitled to protection pursuant to exemption (b)(7)(C). Accordingly, those portions of records in investigatory files which would reveal subjects, witnesses and informants in enforcement investigations are categorically exempt from disclosure under exemption (b)(7)(C). *See SafeCard Services v. SEC*, 926 F.2d 1197 (D.C. Cir. 1991); *Nation Magazine v. U.S. Customs Service*, 71 F.3d 885 (D.C. Cir. 1995); *Quinon v. FBI*, 86 F.3d 1222 (D.C. Cir. 1996); *Dep't of Justice v. Reporters Committee for Freedom of the Press*, 489 U.S. 749 (1989).

---

[3] As discussed, financial and trading records withheld by the staff are, in any event, exempt from disclosure pursuant to FOIA exemption (b)(3). Documents in this category also are protected from disclosure under FOIA exemption (b)(4), which permits withholding of confidential business or financial information.

3

FOIA Exemption (b)(5)

Included among the documents responsive to your request are internal memoranda, attorney notes and summaries, and drafts of documents related to the Commission's investigation. This material was properly withheld pursuant to FOIA exemption (b)(5), 5 U.S.C. § 552(b)(5), which protects from disclosure internal documents that are normally privileged in the context of civil discovery. *See NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 149 (1975); *FTC v. Grolier, Inc.*, 462 U.S. 19, 26 (1983). Such material includes, but is not limited to, predecisional deliberative documents, attorney work product, and memoranda or similar documents prepared by an attorney in contemplation of litigation. *See Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 865 (D.C. Cir. 1980).

Also in this category are internal agency memoranda which are part of the process of commencing and conducting investigatory proceedings. These documents are both predecisional and deliberative; accordingly, they meet the fundamental requirements for protection under FOIA exemption (b)(5). *Mapother*, 3 F.3d at 1537. These documents contain staff opinions and recommendations to the Commission concerning the Commission's investigation, and include evaluations of evidence and witnesses as well as research and comment concerning legal and policy issues. Because release of such deliberative material would harm the consultative quality of future enforcement proceedings, they are properly withheld under exemption (b)(5). *National Wildlife Federation v. U.S. Forest Service*, 861 F.2d 1114, 1119 (9th Cir. 1988); *Schell v. HHS*, 843 F.2d 933, 940 (6th Cir. 1988).

The 1610 pages of responsive material related to Dynegy have provided, or are expected to provide, the basis for a Commission decision whether to bring one or more enforcement actions. This decision will be made after the Commission has evaluated the nature and sufficiency of the information in the documents. To the extent factual material is included in these documents, that material was culled and assembled by Commission staff who extracted pertinent facts from a larger universe of facts for the benefit of senior staff and the Commissioners. The acts of distilling witness testimony and of culling significant facts represents an exercise in judgment that is protected under FOIA exemption (b)(5). *Montrose Chemical Corp. v. Train*, 491 F.2d 63, 68 (D.C. Cir. 1974). Release of such selective factual material would permit indirect inquiry into the consultative and deliberative processes of the Commission in any future exercise of its prosecutorial discretion. *See Mead Data Center, Inc. v. U.S. Dep't of the Air Force*, 566 F.2d 242, 256 (D.C. Cir. 1977); *National Wildlife*, 861 F.2d at 1119; *Schell*, 843 F.2d at 940.

The work product privilege, which protects memoranda and similar documents prepared by an attorney in contemplation of litigation, also is encompassed by FOIA exemption (b)(5). The work product privilege attaches to law enforcement investigations when the investigation is based on "a suspicion of wrongdoing and represent[s] an attempt to garner evidence and to build a case against the suspected wrongdoer." *SafeCard Services*, 926 F.2d at 1202. Documents responsive to your request include notes and memoranda concerning policy and legal issues and analyses as well as documents reflecting discussions or meetings regarding actions the

4

Commission should or may take in the conduct of its investigation. These documents are entitled to protection under exemption (b)(5).

<u>Requests for Confidential Treatment</u>

Exemption 4 of the FOIA, 5 U.S.C. § 552(b)(4), protects from public disclosure trade secrets and commercial or financial information obtained from a person and privileged or confidential. Determining the standard to be applied to an analysis whether commercial or financial information is "confidential" under exemption (b)(4) begins with the question whether the information was required to be submitted to the government or was submitted voluntarily. *Critical Mass Energy Project v. NRC*, 975 F.2d 871 (D.C. Cir. 1992). Information submitted voluntarily to the government is entitled to categorical protection when the agency is able to conclude that it is "of a kind that the provider would not customarily release to the public." *Id.* at 880. For information that is required to be submitted to the government, confidential treatment under exemption (b)(4) turns on whether disclosure likely would either (1) impair the government's ability to obtain necessary information in the future; or (2) cause substantial harm to the competitive position of the submitter. *Id; National Parks & Conservation Ass'n v. Morton*, 498 F.2d 765, 770 (D.C. Cir. 1974).

Staff identified approximately 450 pages of material for which Dynegy has requested confidential treatment. This material includes monthly statement for Dynegy's futures trading accounts, daily trade blotters, trade confirmations, transaction and other reports, and customer lists. These documents were produced in response to various subpoenas issued by the Commission. Where, as here, the information at issue may be characterized as "required" under *Critical Mass*, its confidential status under exemption (b)(4) will be governed by *National Parks*. The burden is on the submitter to demonstrate evidence of actual competition and a likelihood of substantial competitive injury. *CNA Fin. Corp., supra.* at 1152; *Frazee v. U.S. Forest Service*, 97 F.3d 367, 371 (9th Cir. 1996); *Gulf & Western Industries v. U.S.*, 615 F.2d 527, 530 (D.C. Cir. 1979).[4]

By letter dated November 17, 2003, counsel for Dynegy submitted its Response in Support of Confidential Treatment (the "first response") stating, in pertinent part, that the documents produced in response to Commission subpoenas "contain non-public data and information relating to Dynegy's market positions and transactions, customer names, personnel files. . . as well as confidential business information of a sensitive commercial and financial nature that would be of material assistance to Dynegy's competitors." Following our review, this office advised Dynegy that its general assertion of confidentiality was insufficient to permit us to determine whether the information is protected under exemption (b)(4) and, further, that its detailed written justification did not meet the standards established by Commission regulations 145.9(d) and (e), 17 C.F.R. §§ 145.9(d) and (e). To assure a thorough and informed evaluation of the submitter's request for confidential treatment, this office provided Dynegy an opportunity to re-file its detailed written justification consistent with the guidance established by

---

[4] Alternatively, the agency may justify nondisclosure on the ground that release of the documents will impair the government's ability to obtain necessary information in the future. *National Parks, supra.* at 770.

5

Commission regulation. On January 20, 2004, this office received from Dynegy's counsel an additional Response in Support of FOIA Confidential Treatment (the "second response").

In its second response, Dynegy notes that it does not customarily release the type of commercial information described in its response, and notes that it "has taken steps (such as submitting confidential treatment requests to the Commission and the Federal Energy Regulatory Commission. . .) to prevent the documents from being disclosed to the public and to maintain their confidential nature. Had the information at issue been submitted voluntarily to the Commission, Dynegy's customary treatment would be dispositive. *Critical Mass, supra,* at 880. We believe, however, that the information was required by subpoena; thus, the submitter must establish that it would suffer a commercial disadvantage or competitive injury if the information were released to the public. *National Parks, supra,* at 770. Dynegy asserts that release of this commercial information would provide its competitors with a clear picture of its market positions, business strategies and practices and financial condition, "all of which could be used to disadvantage Dynegy in commercial negotiations, transactions and other areas in the highly competitive arena of energy trading."

We note that such "conclusory and generalized allegations do not sustain the burden of nondisclosure" under the FOIA. *See, e.g., National Parks & Conservation Ass'n v. Kleppe,* 547 F.2d 673, 681 (D.C. Cir. 1976); *G.C. Micro Corp. v. Defense Logistics Agency,* 33 F.3d 1109, 1115 (9th Cir. 1994). We recognize, however, that detailed financial records and material relating to trading, as well as customer lists or other identifiers, is highly proprietary. As noted above, information of this nature is separately protected under Section 8(a) of the Commodity Exchange Act, 7 U.S.C. § 12. Accordingly, while we do not endorse the written justifications provided by Dynegy, we believe the commercial information responsive to your request was properly withheld under FOIA exemption (b)(3).

<u>Conclusion</u>

For the reasons discussed above, this office adopts the staff's decision to withhold the responsive documents pursuant to FOIA exemptions (b)(3), (b)(5) and (b)(7). You are entitled to seek judicial review *de novo* of this office's decision in a district court of the United States in the district where you reside, where you have your principal place of business, where the agency records are located, or in the District of Columbia. *See* 5 U.S.C. § 552(a)(4)(B).

Sincerely,

Susan Nathan
Assistant General Counsel

cc:   Lisa A. Dunsky, Esq.
      Mayer Brown Rowe & Maw

      FOIA Compliance Office

6

# EXHIBIT B

| Home | PACER | Deadlines | Statuses | | Help |

# General Docket
## US Court of Appeals for the Fifth Circuit

Court of Appeals Docket #: 08-20546                    Filed: 8/22/08
Nsuit:     0
USA v. Valencia
Appeal from: Southern District of Texas, Houston

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
Lower court information:

    District: 0541-4 : 4:04-CR-514-2
    Trial Judge: Nancy F Atlas, US District Judge
    Court Reporter: Tape - Sheila Roque
    Date Filed: 11/17/04
    Date order/judgment: **/**/**
    Date NOA filed: 8/21/08
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
Fee status: Paid

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
Prior cases:
  None
Current cases:
  None

Docket as of October 6, 2008 9:55 am            Page 1

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

08-20546 USA v. Valencia

UNITED STATES OF AMERICA            James Lee Turner, Assistant US
    Plaintiff - Appellee          Attorney
                                 FAX 713-718-3302
                                 713-567-9102
                                 [COR NTC gvt]
                                 US Attorney's Office
                                 Southern District of Texas
                                 PO Box 61129
                                 Houston, TX 77208-1129

     v.

MICHELLE M VALENCIA            Samuel J Buffone
    Defendant - Appellant          FAX 202-508-4600
                                  202-508-4650
                                 Suite 900
                                 [COR LD NTC ret]
                                 Ropes & Gray
                                 700 12th Street NW
                                 1 Metro Center
                                 Washington, DC 20005

```
                              Chris Flood
                              FAX 713-223-8879
                              713-223-8877
                              Suite 800
                              [NTC ret]
                              Flood & Flood
                              914 Preston Avenue
                              Houston, TX 77002-1832
```

Docket as of October 6, 2008 9:55 am          Page 2

---

08-20546 USA v. Valencia

UNITED STATES OF AMERICA

                   Plaintiff - Appellee

     v.

MICHELLE M VALENCIA

                   Defendant - Appellant

Docket as of October 6, 2008 9:55 am          Page 3

---

08-20546 USA v. Valencia

| | |
|---|---|
| 8/22/08 | Direct criminal case docketed. NOA filed by Appellant Michelle M Valencia. [08-20546] (sbs) |
| 9/12/08 | Appearance form filed by Samuel J Buffone for Appellant Michelle M Valencia. [08-20546] ( No. of forms filed: 1) (cnf) |
| 9/29/08 | Judgment and commitment order entered in the District Court 9/4/08. [08-20546] Transcript Order due on 10/14/08 for Michelle M Valencia. (jmw) |
| 10/6/08 | Transcript order received from Appellant Michelle M Valencia for Court Reporter Tape - SR.  Dates of Hearings: 7/7/06 (Motion Hrg.), 11/3/06 (Motion Hrg.), 8/20-8/21/08 (Sentencing). [08-20546] Transcript Order ddl satisfied. Ct. Reporter Acknowledgment due on 10/21/08 for Tape - SR. (jmw) |

Docket as of October 6, 2008 9:55 am          Page 4

?

---

```
            ┌──────────────────────────────────────┐
            │         PACER Service Center          │
            ├──────────────────────────────────────┤
            │         Transaction Receipt           │
            └──────────────────────────────────────┘
```

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ï | |
| | ï | |
| VS. | ï | NO. 4:04-CR-514-2 |
| | ï | |
| MICHELLE M. VALENCIA | ï | |

## NOTICE OF APPEAL

COMES NOW MICHELLE M. VALENCIA, Defendant, by and through her attorney, Chris

Flood, and respectfully gives notice of appeal to the United States Court of Appeals for the Fifth

Circuit from the Judgment and Sentence entered on August 21, 2008.

Respectfully submitted,

FLOOD & FLOOD

/s/ Chris Flood
Chris Flood
914 Preston at Main, Suite 800
Houston, TX 77002
(713) 223-8877
(713) 223-8879 (Fax)
State Bar No. 07155700
Federal I.D. No. 9929
**Attorney for Defendant**

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing **Notice of Appeal** has been served on
AUSAs John Lewis and Belinda Beek by email and mail on August 21, 2008.

/s/ Chris Flood
Chris Flood

# EXHIBIT C

20030321-3018 Issued by FERC OSEC 03/21/2003 in Docket#: PA02-2-000

UNITED STATES OF AMERICA 102 FERC ¶ 61,311
FEDERAL ENERGY REGULATORY COMMISSION

Before Commissioners: Pat Wood, III, Chairman;
William L. Massey, and Nora Mead Brownell.

| | |
|---|---|
| Fact Finding Investigation of Potential Manipulation of Electric and Natural Gas Prices | Docket No.   PA02-2-000 |
| San Diego Gas & Electric Company, Complainant, v. | Docket No.   EL00-95-048 |
| Sellers of Energy and Ancillary Services Into Markets Operated by the California Independent System Operator and the California Power Exchange, Respondents. | |
| Investigation of Practices of the California Independent System Operator and the California Power Exchange | Docket No.   EL00-98-042 |
| Puget Sound Energy, Inc., et al. Complainant, v. | Docket No.   EL01-10-007 |
| All Jurisdictional Sellers of Energy and/or Capacity at Wholesale into Electric Energy and/or Capacity Markets in the Pacific Northwest, Including Parties to the Western Systems Power Pool Agreement Respondent. | (Not Consolidated) |

20030321-3018 Issued by FERC OSEC 03/21/2003 in Docket#: PA02-2-000

PA02-2-000, EL00-95-048, EL00-98-042, EL01-10-007 (not consolidated)          - 2 -

## ORDER DIRECTING THE RELEASE OF INFORMATION

(Issued March 21, 2003)

1.     On March 5, 2003, the Secretary of the Commission issued a notice that the
Commission intended to release (1) all documents submitted in Docket No. PA02-2-000,
except documents obtained from other Federal agencies in accord with the Federal
Records Act, 44 U.S.C. § 3510(b), and (2) all documents submitted in response to the
Commission's November 20, 2002 and February 10, 2003 orders in Docket Nos. EL00-
95-048, EL00-98-042, and EL01-10-007.  The Commission received 18 comments in
response to the March 5 Notice.[1]  A list of those respondents is appended to this order.

2.     For the reasons set forth below, the Commission is ordering the release of all of
the information covered by the March 5 Notice, no sooner than five days from the
issuance of this order, but in no event before March 26, 2003.

## **Background**

3.     On February 13, 2002, in Docket No. PA02-2-000, the Commission issued an
order directing Staff to conduct an investigation to determine whether any entity
manipulated short-term prices for electric energy or natural gas in the West, or otherwise
exercised undue influence over wholesale electric prices in the West.[2]  In the course of
this investigation, Staff collected data and conducted discovery concerning the
functioning of energy markets in the Western United States during 2000 and 2001.  On
August 13, 2002, Staff issued its Initial Report on Company-Specific Separate

---

[1]At least 200 jurisdictional and non-jurisdictional entities submitted information in
PA02-2-000.  As a general matter, every natural gas and electric jurisdictional company
involved in the Western markets was asked to submit information of one kind or another,
and most asked for confidential treatment of the submitted information.  Thirteen
companies or groups submitted information in the first round of responses to the
November 10 and February 10 orders in EL00-95-048, EL00-48-042, and EL01-10-007.
For the most part, these filers too sought confidential treatment of their filings.

The records in these dockets are immense.  In PA02-2-000 alone, the electronic
records comprise over 2 terabytes of data, which would fill 1.5 million floppy diskettes
or 3,341 compact diskettes.

[2]*Fact-Finding Investigation into Possible Manipulation of Electric and Natural
Gas Prices*, 98 FERC ¶ 61,165 (2002).

20030321-3018 Issued by FERC OSEC 03/21/2003 in Docket#: PA02-2-000

PA02-2-000, EL00-95-048, EL00-98-042, EL01-10-007 (not consolidated)          - 3 -

Proceedings and Generic Reevaluations; Published Natural Gas Price Data; and Enron Trading Strategies, as part of that investigation.  The Commission anticipates the issuance of a Final Report on these matters in the near future.

4.      On November 20, 2002, the Commission issued an order in Docket Nos. EL00-95-048 and EL00-98-042 that allowed the parties in that proceeding to conduct additional discovery into market manipulation by various sellers during the western power crisis of 2000 and 2001, and specified procedures for adducing this information (Discovery Order).[3]  The Discovery Order also required that no later than February 28, 2003, the parties submit directly to the Commission additional evidence and propose new or modified findings of fact with specific citations to the record to support any proposed substantive recommendations.[4]  On February 10, 2003, the Commission issued an order affording the parties the opportunity to respond to submissions made by adverse parties (Rehearing Order).[5]  The Rehearing Order allowed parties until March 17, 2003, to file reply comments directly with the Commission.[6]  (Together, these responses are referred to as the Hundred Day Filings.) The Commission also anticipates issuing an order in the near future with respect to the issues in these dockets.

### Discussion

5.      As an initial matter, the Commission is required to give submitters of information for which confidentiality has been requested an opportunity to comment if a request for information has been submitted under the Freedom of Information Act (FOIA), 5 U.S.C.

---

[3]*San Diego Gas & Elec. Co. v. Sellers of Energy and Ancillary Serv., et al.*, 101 FERC ¶ 61,186 (2002).

[4]By Order dated February 24, 2003, the Commission extended the February 28, 2003 deadline to March 3, 2003.  *See San Diego Gas & Elec. Co. v. Sellers of Energy and Ancillary Serv., et al.*, 102 FERC ¶ 61,194 (2003) (February 24 Order).

[5]*San Diego Gas & Elec. Co. v. Sellers of Energy and Ancillary Serv., et al.*, 102 FERC ¶ 61,164 (2003).  On the same day, the Commission expanded the coverage of these responses to include the proceeding in EL01-10-007.  *Puget Sound Energy, Inc., et al. v. All Jurisdictional Sellers of Energy and/or Capacity at Wholesale into Electric Energy and/or Capacity Markets in the Pacific Northwest, Including Parties to the Western Systems Power Pool Agreement*, 102 FERC ¶ 61,163 (2003).

[6]The February 24 Order extended the March 17, 2003, deadline to March 20, 2003.

PA02-2-000, EL00-95-048, EL00-98-042, EL01-10-007 (not consolidated)          - 4 -

§ 552. In addition, the Commission may give, and as a general practice does give, submitters of purportedly confidential information the same opportunity outside the FOIA context. Here, the Commission is not responding to a FOIA request,[7] but rather is considering the release of information for which confidential treatment has been requested in furtherance of its statutory responsibilities to ensure just and reasonable rates for customers of public utilities and natural gas companies. Consistent with our general practice, the Commission gave submitters of that information an opportunity to comment to assure that their concerns regarding the release of the information were fully ventilated and addressed.

6.     After reviewing the responses, the Commission remains convinced that the release of the information, as qualified below, is necessary and in the public interest. The crisis in the 2000-2001 western energy markets, in particular in California, has been the subject of many state and Federal inquiries and investigations that have implicated the market information, *inter alia*, that the Commission will be releasing. Up to this point, the Commission chose to maintain the confidentiality of the information as requested by the submitters of the information, because it was conducting its own investigations, which could have been impeded by the premature release of the information. Soon, the Commission will finalize its report in PA02-2-000, and also will issue several orders regarding those investigations. Therefore, the release of the information now will enable the public to understand better the evidentiary record on which the Commission's decisions in those proceedings are grounded. Also, any further proceedings in these matters addressing information in the instant dockets will benefit from the release of the information, which will assist in framing the issues and in expeditious resolution of such cases.[8]

_____

[7] There are six outstanding FOIA requests for parts of the PA02-2-000 data and the Hundred Day Filings, but none of these requests encompasses the breadth of information the Commission plans to release here.

[8] To the extent any of the information ordered to be released by this order is subject to protective orders in on-going Commission proceedings, those protective orders are modified or superseded by this order. The affected dockets include, but are not limited to, No. EL99-93, No. EL00-95-45, No. EL01-10, No. EL02-26, *et al.*, No. EL02-60, *et al.*, No. EL02-80, *et al.*, No. EL02-113, No. EL02-114, No. EL02-115, No. EL03-17, No. ER00-2019, No. ER01-819, No. ER01-889, No. ER01-2998, No. ER02-456, No. ER02-925, No. ER03-37, and No. RP00-241-000.

20030321-3018 Issued by FERC OSEC 03/21/2003 in Docket#: PA02-2-000

PA02-2-000, EL00-95-048, EL00-98-042, EL01-10-007 (not consolidated)          - 5 -

7.      Two respondents to the March 5 Notice unequivocally supported release of both sets of data.[9]  They pointed out, *inter alia*, that the public has a right to see the documents on which the California parties and other parties in the Hundred Day Filings are relying and that the public would be well-served by the release of the documents collected in Docket No. PA02-2-000.[10]  Lack of transparency in these proceedings, according to this respondent, has resulted in "an atmosphere of suspicion and misinformation."[11]  While the Commission does not concur in that characterization of the "atmosphere," as maintaining the confidentiality of the information during investigations was critical to the furtherance of its regulatory mission, release of the information will now allow the public a clearer view of the basis for the Commission's determinations that are currently pending and subject to resolution in the near future.

8.      While not necessarily agreeing to the release of the information, several respondents expressed concerns about the timing of the release of the documents, arguing, *inter alia*, that the Commission should release all the information at the same time,[12]  should not release the data until after the responses to the Rehearing Order are filed on March 20,[13] should not release the data until after the Commission has decided

---

[9]Northern California Power Agency, at p. 2; Public Utility District No. 1 of Snohomish County, Washington, at pp.7-9.  Other respondents did not oppose the release of the data in one or the other proceeding.  See Portland General Electric Company, at p. 2 (no opposition to release of PA02-2-000 data); Williams Energy Marketing & Trading Company, at p. 2 (no opposition to release of data in the Hundred Days Filings as long as release is fair and equitable); Duke Energy Corporation, *et al.*, at pp. 2-3 (no opposition to release of data as long as release is fair and equitable); City of Vernon, California, at pp. 2-3 (same).

[10]See Northern California Power Agency, at p. 2.

[11]*Id.*

[12]Williams Energy Marketing & Trading Co., at p. 2; Duke Energy Corporation, *et al.*, at pp. 2-3; City of Vernon, California, at pp. 2-3.

[13]Northern California Power Agency, at p. 2; Williams Energy Marketing & Trading Co., at p. 2; IDACORP Energy L.P., et al., at pp. 5-6; Duke Energy Corporation, *et al.*, at pp. 2-3

20030321-3018 Issued by FERC OSEC 03/21/2003 in Docket#: PA02-2-000

PA02-2-000, EL00-95-048, EL00-98-042, EL01-10-007 (not consolidated)          - 6 -

the cases,[14] should not release the information until the submitters (or at least these submitters) have had an opportunity to review what will be released,[15] and should provide a certain amount of time between the announcement of the release and the actual release to seek judicial intervention.[16] The Commission does not intend to stagger the release of the affected information, but will release it immediately after concluding critical stages of the relevant proceedings through the issuance of Commission decisions on these matters. The Commission wants the public to have access to the entire record underlying any decision in these proceedings. This order also gives parties time to seek judicial intervention. The information will be released not sooner than five days from the issuance of this order and in no event before March 26, 2003, the day on which the Commission has scheduled consideration of orders and other matters that fall within the scope of the dockets covered by the March 5 Notice. Affected companies and other entities have, in fact, been on notice of the Commission's intention to release for more than two weeks since the issuance of the March 5 Notice.[17] It is neither necessary nor

---

[14]El Paso Merchant Energy, L.P., at p. 4; Merrill Lynch Capital Services, Inc., at p. 2; Duke Energy Corporation, *et al.*, at p. 6;

[15]Dynegy Power Marketing, Inc., at p. 1; Californians for Renewable Energy (CARE), at p. 4; Williams Energy Marketing & Trading Co., at p. 3; Duke Energy Corporation, et al., at pp. 7-8; UBS AG, at p. 4.

[16]Dynegy Power Marketing, Inc., at p. 8 (5 days); El Paso Electric Company, at p. 7 (21 days); Williams Energy Marketing & Trading Co., at p. 2 (reasonable amount of time); Dynegy Power Marketing, Inc., at p. 2 (seven days after receipt of responses to Rehearing Order). City of Tacoma and Port of Seattle (at pp. 3-4), which seemingly support the release of the data, express concern that the Commission failed to provide the 30-day notice as required by Section 553(c) of the Administrative Procedure Act, 5 U.S.C. § 553(c). That section, however, applies to informal or notice-and-comment rulemaking, which is inapplicable to the instant matters. The PA02-2-000 docket involves an inquiry by the Commission into price manipulation for the purposes of preparing a report, and the Hundred Day Filings concern complaint proceedings initiated by several companies and groups, beginning in 1999. The Commission has appropriately followed the process laid out in Section 388.112 of its own regulations pertaining to the release of confidential information. *See* 18 C.F.R. 388.112. That regulation requires only that the Commission provide at least five days notice before releasing such information.

[17]Also, since the initiation of the EL00-95 docket in 2000, the Commission has

(continued...)

20030321-3018 Issued by FERC OSEC 03/21/2003 in Docket#: PA02-2-000

PA02-2-000, EL00-95-048, EL00-98-042, EL01-10-007 (not consolidated)          - 7 -

appropriate in these circumstances to delay the release of the information solely to give submitters an opportunity to review their submitted documents again. Except as explicitly noted in this order, the Commission plans to release all of the submitted information. The companies should know what they submitted, and have no right to object to the release of any other entity's submissions. Accordingly, delay for further review is unnecessary and inappropriate.

9.      Other respondents objected to the release of discrete parts of their submittals, but proffered no specific legal basis for withholding the information other than to allude to the concepts underpinning FOIA Exemption 4, which protects from public disclosure "trade secrets and commercial or financial information obtained from a person and privileged or confidential."[18] Some argue generally that the Commission should not release information that is commercially sensitive,[19] that the Commission should not release information in regard to ongoing contracts,[20] that the information is not the type that they would normally release voluntarily,[21] and that the Commission should limit the release by geographic and temporal scope, *i.e.*, the Western wholesale electricity markets for the period 2000 and 2001 to limit the impact on competition.[22] Others made pleas with respect to specific documents.[23]

---

[17](...continued)
received numerous requests from the public, state agencies, and the U.S. Congress to release this information. No submitter can fairly say that those requests did not sufficiently notify submitters of the possibility that the information might be released.

[18]5 U.S.C. § 552(b)(4).

[19]Merrill Lynch Capital Services, Inc., at pp. 1-2; Portland General Electric Company, at pp. 2-3; Southern California Gas Company, at pp. 2-3.

[20]Merrill Lynch Capital Services, Inc., at pp. 2-3; Reliant Energy Services, Inc., *et al.*, at pp. 2-3.

[21]City of Vernon, California, at p. 3.

[22]Merrill Lynch Capital Services, Inc., at p. 2; Competitive Supply Group, at pp. 7-10; El Paso Merchant Energy, L.P., at p. 3; Dynegy Power Marketing, Inc., at p. 1, pp. 7-8.

[23]Californians for Renewable Energy (CARE), at p. 4 (bank account numbers on CARE's exhibits containing checks from sellers to California Governor Davis); Portland
(continued...)

20030321-3018 Issued by FERC OSEC 03/21/2003 in Docket#: PA02-2-000

PA02-2-000, EL00-95-048, EL00-98-042, EL01-10-007 (not consolidated)      - 8 -

10.     While the Commission is reluctant to release information that might be considered commercially sensitive or that might involve ongoing contracts, the public's interest in reviewing and understanding the information that formed the basis for the Commission's decisions and reasons in the affected dockets represents an extraordinary set of circumstances that outweighs the alleged concerns about withholding competitively sensitive information.  The public's need to know here involves the release of information in contracts subject to the Commission's jurisdiction, which overrides any concern that the information should remain concealed.[24]  Likewise, tying the release of information to geographic and temporal limits, as suggested by several of the respondents, would inappropriately depart from our purpose here: to allow the public an opportunity to understand the full basis for our decisions.  In any event, as a practical matter, the information to be released will largely fall within those geographic and temporal bounds, as the Commission's focus has been on the western markets in 2000 and 2001.  Still, to understand those markets, in particular in the PA02-2-000 matter, the Commission needed to explore market matters beyond those boundaries and times, and the public deserves access to that information as well.

11.     Three respondents in particular objected to the release of certain information as competitively sensitive and for that purpose invoked FOIA Exemption 4.[25]  UBS AG specifically raised confidentiality concerns regarding certain assets and intellectual property that UBS AG obtained from Enron, and which UBS AG believes Enron may have submitted to the Commission, including proprietary trading software source codes and system diagrams, proprietary trading/pricing models, and certain databases compiled

---

[23](...continued)
General Electric Company, at pp. 2-3 (all versions of its Energy Trading Policies and Procedures Manual submitted on April 19, 2002); Dynegy Power Marketing, Inc., at p. 2 (bank account information on a check Dynegy wrote to CARE).

[24]For the same reasons, the Commission rejects the argument of Merrill Lynch Capital Services, Inc. (at p. 3) that its request to refrain from disclosing information on its current long-term forward transactions is consistent with the reporting rules for public utilities for forward contracts based on competitive considerations in Order No. 2001-A. Moreover, Order No. 2001 does not contemplate confidential treatment of any of the filings. *Revised Public Utility Filing Requirements*, Order No. 2001, FERC Stats. & Regs. ¶ 31,127, *order on reh'g*, Order No. 2001-A, 100 FERC ¶ 61,074, *order on reh'g*, Order No. 2001-B, 100 FERC ¶ 61,342 (2002).

[25]UBS AG, at pp. 2-10; IDACORP Energy L.P., *et al.*, at Appendices A and B; Aquila, Inc., *et al.*, at pp. 3-5.

PA02-2-000, EL00-95-048, EL00-98-042, EL01-10-007 (not consolidated)          - 9 -

by Enron.[26]  UBS AG claimed that release of confidential proprietary information that it obtained pursuant to a license with Enron would cause competitive harm to UBS AG by allowing its competitors to use the information.  UBS AG also asserted that the information should not be released as it constitutes trade secrets.[27]  Pursuant to FOIA Exemption 4, the Commission is not prohibited from disclosing trade secrets and confidential commercial or financial information; rather, trade secrets and confidential information are exempt from mandatory disclosure.[28]  Similarly, the Commission is not prohibited from disclosing information under the Trade Secrets Act where disclosure is authorized by law.  *See* 18 U.S.C. § 1905.[29]  The Commission has statutory authority to disclose information where necessary, *see, e.g.,* 16 U.S.C. § 797(d); *cf.* 15 U S.C. § 717m and 16 U.S.C § 825k, and indeed is invoking that authority here.[30]

12.    All three respondents also asserted that commercial information that was voluntarily submitted to the Commission is typically kept confidential under the FOIA Exemption 4.[31]  The Commission recognizes that the voluntary submission of

---

[26]UBS AG, at pp. 2-3, 8-9.

[27]UBS AG at pp. 6, 8-9.

[28]*See* 5 U.S.C. § 552(b)(4).

[29]Coverage of Exemption 4 of the FOIA is considered co-extensive with the Trade Secrets Act.  *See Acumenics Research & Tech. v. DOJ*, 843 F.2D 800, 805-07 & n.6 (4th Cir. 1988); *see also National Parks & Conservation Ass'n v. Morton*, 498 F.2d 765, 766 (D.C. Cir. 1974).

[30]Furthermore, pursuant to Article 25.5 of the licensing agreement between UBS AG and Enron, the parties expressly recognized that information may be required to be disclosed to governmental agencies.  See UBS AG, at Exhibit A.  Thus, UBS AG was aware at the time it entered into the licensing agreement that agencies such as the Commission might obtain the information.  Moreover, the Commission conditioned UBS AG's market-based rate authority on UBS AG's providing all information requested by Staff in its investigation in Docket No. PA02-2-000.  *See Order Conditionally Accepting Market-Based Rate Schedule*, 98 FERC ¶ 61,255, at pp. 62,020-21 (2002).  UBS AG knew or should have known that the Commission is not obligated to maintain the confidentiality of such information where, as here, it finds that release is in the public interest.

[31]Aquila, Inc., *et al.*, at pp. 4-5; UBS AG, at p. 10; IDACORP Energy L.P., *et al.*,
(continued...)

20030321-3018 Issued by FERC OSEC 03/21/2003 in Docket#: PA02-2-000

PA02-2-000, EL00-95-048, EL00-98-042, EL01-10-007 (not consolidated)          - 10 -

information is one of the factors that the Commission may consider in deciding whether to withhold information pursuant to FOIA Exemption 4.[32]  The Commission is not required, however, to withhold information that is voluntarily submitted.  Such an approach to the FOIA, which requires Federal agencies to release information, would turn the statute on its head.  For like reasons, the Commission finds no merit in IDACORP Energy L.P.'s argument that the Commission may not release the particular information that the Commission's FOIA Officer, as affirmed by the General Counsel, previously withheld.[33]  Axiomatically, the Commission is not bound by the decisions of members of its staff.  Moreover, the Staff decisions reflected the Commission's position at the time to maintain the confidentiality of the information while investigations and other relating proceedings were pending.

13.      Aquila, Inc., *et al.*, also asserted that release of this information would frustrate the twofold justifications for Exemption 4: (1) encouraging cooperation by those who voluntarily provide information to the government, and (2) protecting the rights of those who must.[34]  The Commission acknowledges that disclosure of voluntarily submitted confidential information here might jeopardize its ability in the future to get information on a cooperative basis and could stymie future investigations if companies fear that the Commission will make broad disclosures of information.  This extraordinary set of cases, however, prompts the Commission to release voluntarily submitted information in order to fulfill its mandate to "make public from time to time the information secured [under the Federal Power Act], and to provide for the publication of its reports and investigations in such form and manner as may be best adapted for public information and use."  16 U.S.C. § 797(d).  The Commission is confident that companies will recognize that the Commission must balance the public interest with the rights of the companies supplying confidential information, and that the companies will continue to voluntarily provide information to the Commission.  On the other hand, if they do not, the Commission can use its subpoena power to obtain needed information.

---

[31](...continued)
at Appendix A.

[32]*See Critical Mass Energy Project v. Nuclear Regulatory Commission*, 975 F.2d 871, 879 (D.C. Cir. 1992).

[33]IDACORP Energy L.P., *et al.*, at pp. 2-3.

[34] Aquila, Inc., *et al.*, at p. 9.

20030321-3018 Issued by FERC OSEC 03/21/2003 in Docket#: PA02-2-000

PA02-2-000, EL00-95-048, EL00-98-042, EL01-10-007 (not consolidated)          - 11 -

14.    Three respondents objected to the release of documents subject to an attorney-client privilege or an attorney work product privilege.[35]  Aquila, Inc., *et al.,* further contended that the protection granted pursuant to the attorney work product is broader than protection granted for the attorney-client privilege; that a court would likely protect attorney work product and attorney client privileged information, and the Commission should too; that its decision to share information with the Commission constituted a limited waiver of the attorney-client and attorney work product privileges; and that release of this information would thwart the practice of companies seeking counsel to investigate and advise them to protect stockholders, potential stockholders, and customers.[36]

15.    While the attorney-client privilege is designed to encourage frank discussion between attorneys and their clients, it is lost when a communication made between an attorney and his client is made known to a third party, as is the case in the instant proceedings.  *See Permian Corp. v. United States,* 665 F.2d 1214, 1219 (D.C. Cir. 1981)("Any voluntary disclosure by the holder of such a privilege is inconsistent with the confidential relationship and thus waives the privilege.")(internal citation omitted). Moreover, the Commission's regulations expressly provide that the Commission "retains the right to make determinations with regard to any claim of privilege, and the discretion to release information as necessary to carry out its jurisdictional responsibilities." 18 C.F.R. § 388.112(c); *see also* 18 C.F.R. § 1.b.20.  Under the circumstances here, the Commission finds that the public's need to have access to the data underlying Commission inquiries outweighs the admittedly important privileges that attach to the relationship between an attorney and his client.  Finally, while the Commission is sensitive to the possible impact of this order on companies' incentives to seek out legal counsel, we find that the potential impact is far outweighed by the many other incentives for companies to investigate potential wrongdoing.  The Commission does not believe that this order will keep reasonable people from seeking legal counsel to protect themselves and their shareholders from legal problems.[37]

---

[35]Dynegy Power Marketing, Inc., at pp. 6-7; El Paso Electric Company, at pp. 4-7; and Aquila, Inc. *et al.*, at pp. 5-10.

[36]Aquila, Inc., *et al.*, at pp. 5-10.

[37]The Commission also rejects El Paso Electric Company's request, at pp. 4-5, that the Commission review each document individually to determine whether a privilege applies.  A document by document examination is unnecessary because the submitters knew or should have known all potential privileges and claims of confidentiality when

(continued...)

20030321-3018 Issued by FERC OSEC 03/21/2003 in Docket#: PA02-2-000

PA02-2-000, EL00-95-048, EL00-98-042, EL01-10-007 (not consolidated)          - 12 -

16.     One respondent objected to the release of settlement proposals and submissions on
the grounds that, pursuant to Section 385.602(e) of the Commission's Rules of Practice
and Procedure, they are not subject to discovery or admissible in evidence.[38]  The
Commission agrees and is not inclined to release any settlement documents.  The records
at issue here, however, should not include such documents.[39]

17.     Three respondents objected to the Commission's release of personal information
on company employees, including conversations on audio tapes that are of a personal
nature.[40]  The Commission recognizes that under FOIA Exemption 6,[41] it could withhold
information where the identity of the individual is clearly recognizable as an unwarranted
invasion of personal privacy.  Even then, however, the Commission may release the
information if the public's right to disclosure outweighs the individual's right to privacy.[42]
Here, at times the identity of the individuals whose voices can be heard on the audio
tapes is difficult if not impossible to discern.  More to the point, even if the identities
could be discerned, as may be the case with certain audio and written records, the
individuals' communications and records were collected for reasons connected to the
inquiries at hand.  For example, the audio tapes reveal trading activities.  The fact that in
the course of those business transactions certain employees may have engaged in
personal conversations is unfortunate, but not sufficient to override the public's need here
to get the full record on a timely basis.  Preparing redacted versions of these matters

---

[37](...continued)
they filed comments on release.  Nothing presented by submitters justifies such a detailed
search of this immense record, see *supra* note 1.  Further, such examination would
unnecessarily delay the release of the documents, which is not in the public interest given
the importance of allowing public access to information underlying our decision here.

     [38]Reliant Energy Services, Inc., *et al.*, at pp. 5-6.

     [39]The Commission is aware of one settlement proposal approved in an order
issued on January 31, 2003.  *See* 102 FERC ¶ 61,108 (2003)(settlement involving
Reliant).  As the document at issue there was submitted and considered in PA02-2-001, it
is not covered by the March 5 Notice, and will not be released pursuant to this order.

     [40]Reliant Energy Services, Inc., *et al.*, at pp. 1, 3-4, 6-8; Dynegy Power Marketing,
Inc., at p. 5; Duke Energy Corporation, *et al.*, at p. 9 & n. 7.

     [41]5 U.S.C. § 552(b)(6).

     [42]*See Dep't of the Air Force, et al., v. Rose, et al.*, 425 U.S. 352, 372 (1976).

PA02-2-000, EL00-95-048, EL00-98-042, EL01-10-007 (not consolidated)        - 13 -

would be immensely time-consuming and would impermissibly delay the release of the information.  Also, for example, certain personnel records obtained in Docket No. PA02-2-000 revealed trading strategies as they were highlighted by the employees in their performance appraisals.  While the Commission would usually be inclined to protect the privacy of company employees in this regard, the current extraordinary situation calls for unusual action.[43]

18.     Two respondents argued that releasing certain documents prepared for confidential investigations being performed by other government agencies would threaten the integrity of these other investigations.[44]  For this purpose, they invoke FOIA Exemption 7, under which the Commission may protect records or information compiled for law enforcement purposes, but only to the extent that release of such records or information: "(A) could reasonably be expected to interfere with enforcement proceedings, (B) would deprive a person of a right to a fair trial or impartial adjudication . . . (E) would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law."[45]

---

[43]If there is personnel information, such as identification numbers (*e.g.*, social security numbers) and benefits plans, that is completely unrelated to the investigation and that if released could cause an individual serious harm, the companies should submit documents to the Commission no later than March 24, 2003, with the individual's personal information redacted.  *See, e.g.*, Reliant Energy Services, Inc., *et al.*, at 7-8 (noting Reliant "stands ready" to submit transcripts with personal information redacted). The broad requests here that personnel information be withheld with nothing more is insufficient for the Commission to undertake the overwhelming task of combing the collectively massive records to cull out this type of information.

[44]Dynegy Power Marketing, Inc., at pp. 1, 3-6 & n. 1; Reliant Energy Services, Inc., *et al.*, at pp. 6-7.  IDACORP also references its arguments made previously with respect to a FOIA request that release of the information would interfere with the Commission's investigation.  IDACORP Energy L.P., at Appendix A at pp. 8-10.  As that investigation is to be concluded at the same time as the release of the information here, IDACORP's argument is moot.  *See Dickerson v. Dep't of Justice*, 992 F.2d 1426, 1431 (6th Cir. 1993)(reiterating that when an investigation is over and the purpose of it has expired, information should be disclosed).

[45]5 U.S.C. § 552(b)(7).

PA02-2-000, EL00-95-048, EL00-98-042, EL01-10-007 (not consolidated)          - 14 -

19.    Importantly, while each of the other agencies with an interest in the Commission's record was notified of the pending release of information, only one of them has officially requested that the Commission not release any particular document or documents. The United States Attorney for the Southern District of Texas requested that certain documents be excluded from release, and sufficiently showed how release of this information would interfere with cases pending trial as well as ongoing and possible investigations, and could affect defendants' rights to a fair trial.[46]  For example, he explained how the release of this evidence would in essence trump the Federal Rules of Criminal Procedure, which controls discovery in criminal cases and allow defense counsel access to information from one company that is not necessarily relevant to what an indicted individual did at another company. He also pointed out that disclosure of employee statements obtained during company internal investigations would allow defense counsel a preview of what others have said as well as who might be a logical target of further investigation. Therefore, the Commission will withhold these specific documents.  No other respondent has shown how release of information will deprive it of a fair trial or impartial adjudication before the other agencies;[47] nor has any other respondent shown that other parties would not have access to particular documents under discovery rules.

20.    As noted in the March 5 Notice, the Commission will not release other Federal agencies' documents, pursuant to the Federal Records Act, 44 U.S.C. § 3510(b). One respondent requested that, in the spirit of that act, the Commission should not release documents filed with other agencies and provided to the Commission as a courtesy.[48]  As the documents were provided to the Commission, they are Commission documents, and not subject to the Federal Records Act.  Therefore, unless they are covered by the request described in Paragraph 19, the Commission will release the documents.

---

[46]Cases pending trial include U.S. v. Michelle M. Valencia (Docket No. H-03-0024), and U.S. v. Todd Geiger (Docket No. H-02-712).

[47]*See Alexander & Alexander Servs. v. SEC,* No. 92-1112, 1993 WL 439799, at **10-11 (D.D.C. Oct. 19, 1993) (*appeal dismissed,* No. 93-5398 (D.C. Cir. Jan. 4, 1993)) (finding that the company "failed to meet its burden of showing how release of particular documents would deprive it of the right to a fair trial") (*citing Washington Post Co. v. United States Dep't of Justice*, 863 F.2d 96, 101-102 (D.C. Cir. 1988)).

[48]Duke Energy Corporation, *et al.*, at p. 8.

20030321-3018 Issued by FERC OSEC 03/21/2003 in Docket#: PA02-2-000

PA02-2-000, EL00-95-048, EL00-98-042, EL01-10-007 (not consolidated)          - 15 -

<u>The Commission orders</u>:

The non-public documents collected in Docket No. PA02-2-000 and filed in response to the Commission's November 20, 2002 and February 10, 2003, orders in Docket Nos. EL00-95-048, EL00-98-042, and EL01-10-007 will be released, as discussed in this order, no sooner than five days from the issuance of this order.

By the Commission.

( S E A L )

Magalie R. Salas,
Secretary.

20030321-3018 Issued by FERC OSEC 03/21/2003 in Docket#: PA02-2-000

# Appendix

20030321-3018 Issued by FERC OSEC 03/21/2003 in Docket#: PA02-2-000

**Respondents to March 5, 2003 Notice of Release of Confidential Documents
In PA02-2-000 and EL00-95-000, EL00-98-000, and EL01-10-000**

1. Aquila, Inc. and Aquila Merchant Services, Inc.
2. Californians for Renewable Energy (CARE)
3. City of Tacoma and the Port of Seattle
4. City of Vernon, California
5. Competitive Supplier Group
6. Duke Energy Corporation
7. Dynegy Power Marketing, Inc.
8. El Paso Electric Company
9. El Paso Merchant Energy, L.P.
10. Idacorp Energy L.P.; Idaho Power Company
11. Merrill Lynch Capital Service, Inc.
12. Northern California Power Agency
13. Portland General Electric Company
14. Public Utility District No. 1 of Snohomish County, Washington
15. Reliant Energy Services, Inc.
16. Southern California Gas Company
17. UBS AG
18. Williams Energy Marketing & Trading