FILED

2009 Feb-11  AM 02:44
U.S. DISTRICT COURT
N.D. OF ALABAMA



# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA

BALCH & BINGHAM LLP,  )
           )
   Plaintiff,   )
           )
v.          )   Civ. No.:  CV-08-HGD-2281-S
           )
U.S. COMMODITY FUTURES )
TRADING COMMISSION,  )
           )
   Defendant.  )

## DEFENDANT COMMODITY FUTURES TRADING COMMISSION'S MOTION TO DISMISS FOR FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES

Exhibit 3 El Paso Detailed Written Justification of FOIA Confidential Treatment
     Request, dated 20 Oct 2008.

**MORRISON | FOERSTER**

425 MARKET STREET
SAN FRANCISCO
CALIFORNIA 94105-2482

TELEPHONE:415.268.7000
FACSIMILE:415.268.7522

WWW.MOFO.COM

MORRISON & FOERSTER LLP

NEW YORK, SAN FRANCISCO,
LOS ANGELES, PALO ALTO,
SAN DIEGO, WASHINGTON, D.C.

DENVER, NORTHERN VIRGINIA,
ORANGE COUNTY, SACRAMENTO,
WALNUT CREEK, CENTURY CITY

TOKYO, LONDON, BEIJING,
SHANGHAI, HONG KONG,
SINGAPORE, BRUSSELS

Writer's Direct Contact
415.268.6145
SPlunkett@mofo.com

**Detailed Written Justification of FOIA Confidential Treatment Request**

October 20, 2008

By Email and Overnight Delivery

Assistant Secretary of the Commission for FOIA
Privacy and Sunshine Acts Compliance
Commodity Futures Trading Commission
Three Lafayette Centre, 8th Floor
1155-21st Street, N.W.
Washington, D.C. 20581

Re:   *Detailed Written Justification of FOIA Confidential Treatment Request, FOIA No. 08-0141*

Dear Assistant Secretary:

In response to your letter of October 6, 2008, we hereby submit on behalf of El Paso Merchant Energy, L.P. (now known as El Paso Marketing, L.P.) ("El Paso") this detailed written justification of FOIA confidential treatment pursuant to 17 C.F.R. § 145.9(e). El Paso requests that certain information submitted to the Commission in connection with *In the Matter of El Paso Merchant Energy, L.P.* (CFTC Docket No. 03-09) be withheld from public availability under FOIA pursuant to the exemption provided in 5 U.S.C. § 552(b)(4). This letter is supported by the Affidavit of Sheila Roberts ("Aff."), attached hereto as Exhibit 1.

Description of Information

Between November 2002 and March 2003, El Paso made numerous submissions of information to the Commission in connection with CFTC Docket No. 03-09. El Paso requests confidential treatment only for the documents bearing production numbers CFT-0005321-CFT-0005501 and CFT-0005503-CFT-0005746. El Paso originally requested FOIA confidential treatment for these documents. The documents are:

MORRISON | FOERSTER

Assistant Secretary of the Commission for FOIA
October 20, 2008
Page Two

1. Summaries of employee interviews conducted by Haynes & Boone ("interview summaries") (CFT-0005321-CFT-0005501) submitted to the Commission on January 31, 2003. El Paso requested FOIA confidential treatment for this information in a letter dated January 31, 2003, to Elizabeth Streit, an attorney with the Commission. (Aff. ¶ 4, Ex. A.)

2. Exhibits to the summaries of employee interviews conducted by Haynes & Boone ("exhibits") (CFT-0005505-CFT-0005747) and two tables describing the dates on which the interviews took place (CFT-0005503-CFT0005504), which were submitted to the Commission on February 14, 2003. El Paso requested FOIA confidential treatment for this information in a letter dated February 14, 2003, to Elizabeth Streit, an attorney with the Commission. (Aff. ¶ 5, Ex. B.)

### Background

The information for which El Paso seeks confidential treatment was voluntarily submitted to the Commission in connection with the investigation of El Paso's trading practices relating to the reporting of natural gas trading information. The investigation was settled in anticipation of the institution of an administrative proceeding. The facts leading to the settlement are recited in the Commission's March 26, 2003 Order Instituting Proceedings Pursuant To Sections 6(c) And 6(d) Of The Commodity Exchange Act, Making Findings And Imposing Remedial Sanctions ("Order"), attached as Exhibit 2.

As stated in the Order, and confirmed in the attached Affidavit, El Paso cooperated with the investigation by voluntarily providing the Commission with requested information. (Order at 2-3; Aff. ¶¶ 4-5.) Specifically, El Paso voluntarily submitted to the Commission the interview summaries and exhibits. These documents were prepared at El Paso's request by an independent law firm, Haynes & Boone, as part of an internal investigation initiated by El Paso prior to the Commission's investigation. (Aff. ¶¶ 2-3.) The interview summaries and exhibits are privileged and confidential, and it was El Paso's understanding that, by voluntarily submitting this information to the Commission, it was waiving its privilege claims only for the limited purpose of cooperating with the Commission's investigation. (*Id.* ¶¶ 2-3; 6.) The Commission's Order reiterates these points:

> El Paso initiated an internal investigation by hiring an independent law firm to conduct a timely investigation relating to false reports to price gathering and reporting services. *In voluntarily providing the Commission with this information, El Paso waived certain claims of work product privilege for the limited purpose of cooperating with the Commission.*

sf-2590101

MORRISON | FOERSTER

Assistant Secretary of the Commission for FOIA
October 20, 2008
Page Three

> Subsequently, El Paso voluntarily provided Commission staff
> with interview reports of current and former El Paso traders.

(Order at 2 (emphasis supplied).)

The FOIA requester is an attorney for Nevada Power Company ("Nevada Power") in
ongoing civil litigation with El Paso. (*Sierra Pacific Resources and Nevada Power
Company v. El Paso Corporation, et al.*, United States District Court for the District of
Nevada, CV-S-03-0414-JCM-RJJ.)  Nevada Power has requested from El Paso in that
litigation the same documents in seeks from the Commission. (Aff. ¶ 7.)  El Paso has
objected to producing these documents on several grounds, including that they are privileged.
(*Id.*)  The FOIA request thus appears to be an attempt to circumvent the discovery process
already underway in the civil litigation.

### Detailed Justification

The information contained in the interview summaries and exhibits is commercial and
financial information that is privileged or confidential and is therefore exempt from public
disclosure under FOIA.  Given El Paso's understanding that it did not waive its claim of
privilege for FOIA purposes when it voluntarily submitted the information to the
Commission, and the discovery process already underway in the District of Nevada action,
El Paso requests that the Commission withhold the interview summaries and exhibits from
public availability.

FOIA exempts from its public disclosure requirements (1) "trade secrets" and (2)
"commercial or financial information" that is obtained from a person that is either privileged
or confidential.  5 U.S.C. § 552(b)(4) ("Exemption 4").

The interview summaries and exhibits should be withheld here because they contain
commercial or financial information that is privileged and confidential.  First, the
Commission regulations specifically identify this type of information as included in
Exemption 4:

> Information contained in reports, summaries, analyses,
> transcripts, letter or memoranda arising out of, in anticipation
> of or in connection with an examination or inspection of the
> books and records of any person or any other formal or
> informal inquiry or investigation.

MORRISON | FOERSTER

Assistant Secretary of the Commission for FOIA
October 20, 2008
Page Four

17 C.F.R. § 145.5(d)(2).  Applying the plain language of this regulation, the information provided is clearly exempted.  The interview summaries and exhibits are "reports" or "summaries" that were prepared for El Paso both "in connection with" its own internal "investigation" and "in anticipation of" an "inquiry" or "investigation" of the type that was subsequently instituted by the Commission.

Second, FOIA precedent establishes that this type of information should not be made public.  Exemption 4 applies where the information is shown to be (i) commercial or financial, (ii) obtained from a person, and (iii) privileged or confidential.  *See Public Citizen Health Research Group v. Food & Drug Admin.*, 704 F.2d 1280, 1290 (D.C. Cir. 1983).  Each of these factors is present here.

        1.     <u>Commercial or Financial</u>

The interview summaries and exhibits contain commercial or financial information.  The terms "commercial" and "financial" in Exemption 4 should be given their ordinary meanings.  *Public Citizen*, 704 F.2d at 1290.  The interview summaries and exhibits relate to commerce because they reveal El Paso's trading practices and procedures.  They are also financial in nature because they relate to prices of natural gas.  Several courts have found similar information to be "commercial" and/or "financial" for purposes of Exemption 4.  *See, e.g.*, *Reliant Energy Power Generation, Inc. v. FERC*, 520 F. Supp. 2d 194, 201 (D.D.C. 2007) (studies of trading practices are "commercial"); *Dow Jones Co., Inc. v. FERC*, 219 F.R.D. 167, 176 (C.D. Cal. 2002) (information relating to business practices regarding sale of power commercial and financial in nature).

        2.     <u>Obtained from a Person</u>

The information was obtained from a person — El Paso.  5 U.S.C. § 551(2) (defining "person" to include "an individual, partnership, corporation, association, or public or private organization other than an agency"); *Reliant Energy*, 520 F. Supp. 2d at 201 (company voluntarily reporting information to agency is a "person" for purposes of Exemption 4).

        3.     <u>Confidential or Privileged</u>

The interview summaries and exhibits are "confidential" under FOIA precedent.  The standard for determining whether information is "confidential" for purposes of Exemption 4 depends on whether the information was submitted "voluntarily."  Where, as here, financial or commercial information is provided to the government on a voluntary basis, it is "confidential" if it is "of a kind that would customarily not be released to the public by the person from whom it was obtained."  *Baker & Hostetler LLP v. U.S. Dep't of Commerce*, 312, 320 (D.C. Cir. 2006); *Critical Mass Energy Project v. Nuclear Regulatory Comm'n*,

MORRISON | FOERSTER

Assistant Secretary of the Commission for FOIA
October 20, 2008
Page Five

975 F.2d 871, 879 (D.C. Cir. 1992).  The interview summaries and exhibits were provided to
the Commission on a voluntary basis as part of its cooperation with the Commission's
investigation.  (Order at 2; Aff. ¶¶ 4-5.)  This is not the kind of information that El Paso
would customarily release to the public.  (Aff. ¶ 6.)  For these reasons, , the information
contained in the interview summaries and exhibits is "confidential" under Exemption 4.  *See
Judicial Watch, Inc. v. U.S. Dep't of Justice*, 306 F. Supp. 2d 58, 68 (D.D.C. 2004)
(justification "easily fulfills" standard for documents produced voluntarily where company
attested that the information withheld was provided "with an expectation that it would be
kept confidential and is information that [the company] does not disclose publicly").

Even if it were not submitted voluntarily, the information would still be "confidential" under
FOIA precedent.  When the government requires production of commercial or financial
matter, it is "confidential" if disclosure of the information is likely to (1) impair the
government's ability to obtain necessary information in the future or (2) cause substantial
harm to the competitive position of the person from whom the information was obtained.
*Nat'l Parks and Conservation Ass'n v. Morton*, 498 F.2d 765 (D.C. Cir. 1974).  At a
minimum, the first prong is met here because public disclosure of the interview summaries
and exhibits would impair the Commission's ability to collect similar information necessary
to its investigations in the future.  *See Reliant Energy*, 520 F. Supp. 2d at 201 (studies of
trading practices submitted to FERC "confidential" because disclosure "would impair
FERC's ability to collect this data in the future").

The information is also privileged, as the Commission's Order acknowledges.  The interview
summaries and exhibits were prepared for El Paso by Haynes & Boone, an independent law
firm.  (Aff. ¶¶ 2-3.)  The Commission found that, by voluntarily providing the Commission
with this information, "El Paso waived certain claims of work product privilege *for the
limited purpose* of cooperating with the Commission staff."  Order at 2 (emphasis added).
Thus, it was the understanding of both El Paso and the Commission at the time the
information was provided that El Paso's claim of privilege was not waived for purposes of a
subsequent FOIA request.  (*Id.*; Aff. ¶ 6.)  Any dispute regarding whether the documents are
privileged can and should be addressed in the civil action pending in the District of Nevada.

**MORRISON | FOERSTER**

Assistant Secretary of the Commission for FOIA
October 20, 2008
Page Six

Based on the foregoing, El Paso requests confidential treatment of the Haynes & Boone
employee interview summaries and exhibits.

Very truly yours,

Stuart C. Plunkett


cc:    Kelly Brennan, Esq., Balch & Bingham LP

sf-2590101

# AFFIDAVIT

I, Sheila Roberts, declare as follows:

1.      I am a Senior Paralegal in the litigation department for El Paso Energy Service Company, and am authorized to make this affidavit on behalf of El Paso Merchant Energy, L.P. (now known as El Paso Marketing, L.P.) ("El Paso").  I have personal knowledge of the facts set forth in this affidavit and, if called as a witness, could and would competently testify to the matters set forth herein.

2.      On or about October 22, 2002, El Paso initiated an internal investigation of its practices relating to the reporting of natural gas trades to price gathering and reporting services.  As part of this investigation, El Paso hired Haynes & Boone, an outside law firm, to conduct interviews of El Paso employees.  It was El Paso's understanding that the information collected by Haynes & Boone in the course of its investigation was privileged.

3.      Thereafter, on or about November 2002, Haynes & Boone prepared a series of memoranda summarizing the employee interviews.  These memoranda and exhibits thereto were marked "privileged and confidential," and it was El Paso's understanding these documents were protected by the attorney-client privilege and attorney work product doctrine.

4.      On January 31, 2003, in response to a request from the Commodities Future Trading Commission ("the Commission"), El Paso voluntarily provided the Commission with the Haynes & Boone interview summaries.  These documents were labeled CFT-0005321-CFT-0005501.  A copy of the January 31, 2003 letter submitting this information and requesting FOIA confidential treatment is attached as Exhibit A.

5.      On February 14, 2003, also in response to a request from the Commission, El Paso voluntarily provided the Commission with the exhibits to the Haynes & Boone interview summaries, along with two tables describing the dates on which the interviews took place.  These documents were labeled CFT-0005503-CFT-0005746.  A copy of the February 14, 2003 letter submitting this information and requesting FOIA confidential treatment is attached as Exhibit B.

sf-2591752

6.      The Haynes & Boone interview summaries and exhibits were submitted to the Commission with the expectation that this information would remain confidential.  The information in these documents is not the type of information that El Paso would customarily release to the public.

7.      El Paso is a defendant in *Sierra Pacific Resources and Nevada Power Company v. El Paso Corporation, et al.*, CV-S-03-0414-JCM-RJJ, a case currently pending in the U.S. District Court for the District of Nevada.  On June 11, 2008, Nevada Power propounded document requests on El Paso that seek the production of documents provided to the Commission in connection with its investigation, including the information described in paragraphs 5 and 6 of this Affidavit.  As set forth in its June 28, 2008 response to this request, El Paso has objected to these requests because, among other reasons, they seek privileged documents.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed this 17th day of October 2008 at Houston, Texas, United States.



Sheila Roberts

sf-2591752

**ROBERTS AFF. EXHIBIT A**

# SULLIVAN & CROMWELL LLP

TELEPHONE: 1-212-558-4000
FACSIMILE: 1-212-558-3588
WWW.SULLCROM.COM

*125 Broad Street*
*New York, NY 10004-2498*

LOS ANGELES • PALO ALTO • WASHINGTON, D.C.

FRANKFURT • LONDON • PARIS

BEIJING • HONG KONG • TOKYO

MELBOURNE • SYDNEY

FOIA CONFIDENTIAL TREATMENT REQUESTED

January 31, 2003

Via Federal Express

Elizabeth Streit, Esq.,
      Commodity Futures Trading Commission,
            Division of Enforcement,
                  525 West Monroe Street, Suite 1100,
                        Chicago, IL 60661.

            Re:      CFTC Request for El Paso Merchant Energy, L.P. Materials

Dear Ms. Streit:

            In response to your requests, we enclose on behalf of El Paso Merchant
Energy, L.P., a CD containing 1) public filings to the Federal Energy Regulatory
Commission on wash trading, bearing production numbers CFT-0005298-CFT-0005320;
and 2) summaries of employee interviews conducted by Haynes and Boone, bearing
production numbers CFT-0005321-CFT-0005501. We have also enclosed a chart
bearing production number CFT-0005502 that lists the last known addresses and phone
numbers for terminated cash and financial traders.

            Pursuant to the Commodity Futures Trading Commission Regulation
§145.9 and for reasons of business confidentiality and personal privacy, we hereby
request that this letter and the enclosed documents, and the information contained in this
letter and in the enclosed materials not be disclosed in response to any request under the
Freedom of Information Act, 5 U.S.C. § 552 (1994) ("FOIA"). The foregoing request
also applies to any transcripts, notes, memoranda, tapes or other materials of any sort that
are made by or at the request of the Commission and incorporate, refer or relate to any of
the information contained in these materials.

FOIA CONFIDENTIAL TREATMENT REQUESTED

-2-

If you have any questions about the enclosed, please contact me at (212) 558-4675.

Sincerely,

Kenneth M. Raisler

(Enclosures)

cc:    Eileen A. Donovan
       Assistant Secretary for FOIA Matters (w/o encl.)
       Commodities Futures Trading Commission
       Three Lafayette Centre
       1155 21st Street, NW
       Washington, D.C.  20581

**ROBERTS AFF. EXHIBIT B**

# SULLIVAN & CROMWELL LLP

TELEPHONE: 1-212-558-4000
FACSIMILE: 1-212-558-3588
WWW.SULLCROM.COM

*125 Broad Street*
*New York, NY 10004-2498*

LOS ANGELES • PALO ALTO • WASHINGTON, D.C.

FRANKFURT • LONDON • PARIS

BEIJING • HONG KONG • TOKYO

MELBOURNE • SYDNEY

FOIA CONFIDENTIAL TREATMENT REQUESTED

February 14, 2003

Via Federal Express

Elizabeth Streit, Esq.,
      Commodity Futures Trading Commission,
            Division of Enforcement,
                  525 West Monroe Street, Suite 1100,
                        Chicago, IL 60661.

            Re:      CFTC Request for El Paso Merchant Energy, L.P. Materials

Dear Ms. Streit:

            In response to your request, we enclose on behalf of El Paso Merchant
Energy, L.P., a CD containing 1) exhibits to the summaries of employee interviews
conducted by Haynes & Boone, bearing production numbers CFT-0005505-CFT-
0005746 and 2) two tables describing the dates on which the interviews took place,
bearing production numbers CFT-0005503-CFT-0005504.

            Pursuant to the Commodity Futures Trading Commission Regulation
§145.9 and for reasons of business confidentiality and personal privacy, we hereby
request that this letter and the information contained in this letter not be disclosed in
response to any request under the Freedom of Information Act, 5 U.S.C. § 552 (1994)
("FOIA"). The foregoing request also applies to any transcripts, notes, memoranda, tapes
or other materials of any sort that are made by or at the request of the Commission and
incorporate, refer or relate to any of the information contained in these materials.

FOIA CONFIDENTIAL TREATMENT REQUESTED

-2-

If you have any questions, please contact me at (212) 558-4675.

Sincerely,

Kenneth M. Raisler

(Enclosures)

cc:    Eileen A. Donovan
       Assistant Secretary for FOIA Matters (w/o encl.)
       Commodities Futures Trading Commission
       Three Lafayette Centre
       1155 21st Street, NW
       Washington, D.C.  20581

UNITED STATES OF AMERICA
Before the
COMMODITY FUTURES TRADING COMMISSIONS



OFFICE OF PROCEEDINGS
PROCEEDINGS CLERK

2003 MAR 26  A 8: 12

RECEIVED
C.F.T.C.

In the Matter of:

EL PASO MERCHANT ENERGY, L.P.,

Respondent.

)
)
)
)
)
)
)
)
)
)
)
)
)
)

CFTC Docket No.: 03-09-12

ORDER INSTITUTING
PROCEEDINGS PURSUANT TO
SECTIONS 6(c) AND 6(d) OF THE
COMMODITY EXCHANGE ACT,
MAKING FINDINGS AND
IMPOSING REMEDIAL SANCTIONS

## I.

The Commodity Futures Trading Commission ("Commission") has reason to believe that El Paso Merchant Energy, L.P. ("EPME"), a business unit of El Paso Corporation ("El Paso"), has violated Sections 6(c), 6(d), and 9(a)(2) of the Commodity Exchange Act, as amended (the "Act"), 7 U.S.C. §§ 9, 13b, and 13(a)(2) (2000).  Further, the Commission has reason to believe that EPME has violated Commission Regulations 1.31, 1.35 and 1.40, 17 C.F.R. §§ 1.31, 1.35 and 1.40 (2002).  Therefore, the Commission deems it appropriate and in the public interest that public administrative proceedings be, and hereby are, instituted to determine whether EPME ("Respondent") engaged in the violations set forth herein, and to determine whether any order should be issued imposing remedial sanctions.

## II.

In anticipation of the institution of an administrative proceeding, the Respondent has submitted an Offer of Settlement (the "Offer"), which the Commission has determined to accept.  Without admitting or denying the findings of fact herein, the Respondent consents to the entry of this Order in full and final settlement of any alleged violations of the above referenced laws or regulations solely as they relate to the activities and conduct described in Section C below and acknowledge service of this Order Instituting Proceedings Pursuant to Sections 6(c) and 6(d) of the Commodity Exchange Act, Making Findings and Imposing Remedial Sanctions ("Order").  Respondent

1

consents to the use by the Commission of the findings herein in the proceeding brought by the Commission and in any other proceeding brought by the Commission or to which the Commission is a party.[1]

## III.

The Commission finds the following:

### A.   SUMMARY

From at least June 2000 through November 2001 (the "Relevant Period"), EPME reported false natural gas information, including price and volume information about natural gas cash transactions it purportedly made, to certain reporting firms and thereby attempted to manipulate the natural gas market. Price and volume information is used by reporting firms in calculating published indexes of natural gas prices for various pipeline hubs throughout the United States. During the relevant period, EPME knowingly reported non-existent trades to the reporting firms while at the same time withholding information about actual trades it had made from the reporting firms. EPME did so in an attempt to skew those indexes to Respondent's financial benefit.

In addition, EPME did not maintain certain required records concerning the information it provided to the reporting firms as required by Commission Regulations.

The settlement in this matter takes into consideration the nature and extent of cooperation provided to the Commission staff investigating this matter. Prior to the Division of Enforcement ("Division") discovering violative conduct, EPME initiated an internal investigation by hiring an independent law firm to conduct a timely investigation relating to false reports to price gathering and reporting services. In voluntarily providing the Commission with this information, EPME waived certain claims of work product privilege for the limited purpose of cooperating with the Commission. Subsequently, EPME voluntarily provided Commission staff with interview reports of current and former EPME traders and analyzed and compiled trading data, which detailed all reported and all actual trades in the natural gas markets. At the Division's request, EPME promptly searched for and produced, on a voluntary basis, e-mails and audio recordings. These productions were voluminous and were produced in an organized and user-friendly format. At the Division's request, EPME voluntarily produced a senior risk manager to explain its risk management operations. Finally, after uncovering the violative conduct, El Paso decided to cease trading operations and the employees responsible for the activities referenced above are no longer with the Company.

---

[1] Respondent does not consent to the use of its Offer or the findings in this Order as the sole basis for any other proceeding brought by the Commission, other than a proceeding brought to enforce the terms of this Order. Respondent does not consent to the use of the Offer or the findings in this Order by any other person or entity in this or any other proceeding. The findings made in this Order are not binding on any other person or entity, including, but not limited to, any person or entity named as a defendant or respondent in any other proceeding.

The sanctions imposed by this order take EPME's voluntary disclosures and its early and consistent cooperation into consideration.     Absent that cooperation, the Commission likely would have imposed a more severe sanction.   We have previously noted that we take the respondent's level of cooperation into consideration in evaluating settlement offers.   *See In re Sumitomo Corp.* 1998 WL 236520 (CFTC May 11, 1998) (respondent's cooperation included voluntary production of documents that the Commission might not have been able to obtain from a foreign corporation).

**B.     RESPONDENT**

**El Paso Merchant Energy, L.P.** is a limited partnership organized and existing under the laws of the State of Delaware and is a business unit of El Paso.[2]   During all times relevant herein, it was EPME's function to conduct El Paso's marketing and trading of natural gas and power generation, *i.e.*, the company's merchant energy activities. EPME is a non-clearing member of the New York Mercantile Exchange ("NYMEX"), a designated contract market, and during the relevant period, was a large trader in NYMEX natural gas futures and options contracts on NYMEX.

**C.     FACTS**

**1.     Gas Market Participants' Use of Information from Reporting Firms**

During the Relevant Period, reporting firms compiled and published indexes of natural gas prices for natural gas hubs throughout the United States.   The indexes were calculated based upon trading information, including volume and price information, collected by the reporting firms from market participants.   Participants in the natural gas markets use these indexes to price and settle commodity transactions.   Moreover, natural gas futures traders refer to the prices published by the reporting firms for price discovery and for assessing price risks.   For instance, an increase in prices at a natural gas trading hub signals either stronger demand or weakened supply and futures traders take account of both price movements and changes in the supply/demand balance when conducting their futures trading.

**2.     EPME Reported False Market Information**

From at least June 2000 through November 2001, Respondent provided false reports to the reporting firms and failed to keep copies of required reports.[3]   The false reports included altering price and volume of actual trades and reporting nonexistent trades using

---

[2] El Paso Corporation is a Delaware corporation headquartered at 1001 Louisiana Street, Houston, Texas. It is one of the largest North American providers of natural gas services, with core businesses in natural gas production, gathering and processing, transmission, as well as liquefied natural gas transport and receiving, petroleum logistics, power generation and merchant energy services.

[3] Certain EPME employees claimed to have reported to EPME's "book bias", meaning that EPME traders reported transactions that would benefit the firm's net long or short position, regardless of what actual trades had transpired.

telephones, faxes, and the Internet.  Respondent's employees provided false trade data because they believed that it benefited their trading positions or derivatives contracts. Respondent also failed to report actual trades to the reporting firms.

**D.    LEGAL DISCUSSION**

**1.    By Reporting False Market Information, EPME Violated Section 9(a)(2) of the Act**

Section 9(a)(2) of the Act makes it unlawful for any person "knowingly to deliver or cause to be delivered for transmission through the mails or interstate commerce by telegraph, telephone, wireless, or other means of communication false or misleading or knowingly inaccurate reports concerning crop or market information or conditions that affect or tend to affect the price of any commodity in interstate commerce[.]" *See, e.g.*, *United Egg Producers v. Bauer Int'l Corp.*, 311 F. Supp. 1375, 1383 (S.D.N.Y. 1970) (concluding that false press releases regarding egg importation "tended to affect the price of eggs in interstate commerce"); *In re Soybean Futures Litig.*, 892 F. Supp. 1025, 1046 (N.D. Ill. 1995) (concluding that false reports can influence prices and constitute part of a manipulation claim).

Respondent violated Section 9(a)(2) of the Act when its employees knowingly delivered false price and volume information, including nonexistent trades, to the reporting firms.[4]  As discussed above, price and volume information affect or tend to affect the market price of natural gas, including futures prices as traded on the NYMEX. As such, Respondent violated Section 9(a)(2) of the Act.

**2.    By Attempting to Manipulate Prices, EPME Violated Sections 6(c), 6(d) and 9(a)(2) of the Act**

Sections 6(c) and 6(d) of the Act together authorize the Commission to serve a complaint and provide for the imposition of, among other things, civil monetary penalties and cease and desist orders if the Commission "has reason to believe that any person ... has manipulated or attempted to manipulate the market price of any commodity, in interstate commerce, or for future delivery on or subject to the rules of any registered entity ... or otherwise is violating or has violated any of the provisions of [the] Act." Section 9(a)(2) provides that it is unlawful for "[a]ny person to manipulate or attempt to

---

[4] Under Section 2(a)(1)(B) of the Act and Section 1.2 of the Commission's Regulations, the act, omission, or failure of any official, agent, or other person acting for any individual, association, partnership, corporation, or trust within the scope of his employment or office shall be deemed the act, omission, or failure of such individual, association, partnership, corporation, or trust.  "[I]t does not matter if the principal participated in or even knew about the agent's acts; he is strictly liable for them." *Stotler and Co. v. CFTC*, 855 F.2d 1288, 1292 (7th Cir. 1988) (citing *Cange v. Stotler*, 826 F. 2d 581, 589 (7th Cir. 1987); *Rosenthal & Co. v. CFTC*, 802 F.2d 963, 966-67 (7th Cir. 1986)).  Consequently, EPME is liable for its employees' violations of the Act and Commission Regulations.

manipulate the price of any commodity in interstate commerce, or for future delivery on or subject to the rules of any registered entity, or to corner or attempt to corner any such commodity."

The following elements generally are required to show an attempted manipulation:    (1) an intent to affect the market price; and (2) some overt act in furtherance of that intent. *See In re Abrams*, [1994-1996 Transfer Binder] Comm. Fut. L. Rep. (CCH) ¶ 26,479 at 43,136 (CFTC July 31, 1995). *See also In re Hohenberg Bros. Co.*, [1975-1977 Transfer Binder] Comm. Fut. L. Rep. (CCH) ¶ 20,271 at 21,477 (CFTC Feb. 18, 1977).  To prove the intent element of manipulation or attempted manipulation, it must be shown that EPME "acted (or failed to act) with the purpose or conscious object of causing or effecting a price or price trend in the market that did not reflect the legitimate forces of supply and demand." *In re Indiana Farm Bureau Cooperative Association*, [1982-1984 Transfer Binder] Comm. Fut. L. Rep. (CCH) ¶ 21,796 at 27,281 (CFTC Dec. 17, 1982).  "[I]ntent is the essence of manipulation." *Id.* at 27,282.

Respondent specifically intended to report false or misleading or knowingly inaccurate market information concerning, among other things, trade prices and volume of trading, and failed to report actual market information in an attempt to manipulate the price of natural gas in interstate commerce.  Respondent's provision of the false reports and failure to report actual trades constitute overt acts in furtherance of the attempted manipulation.  By so doing, Respondent's conduct constitutes an attempted manipulation under Section 9(a)(2) of the Act, which, if successful, could have affected prices of NYMEX natural gas futures contracts.

### 3. EPME's Failure to Retain Trading Records Violated Commission Regulations 1.31, 1.35 and 1.40

EPME, a non-clearing NYMEX member, failed to keep certain records required of members of a contract market, including records of what EPME relayed to the reporting firms.  Together, Commission Regulations 1.31, 1.35 and 1.40, 17 C.F.R. §§ 1.31, 1.35 and 1.40, required EPME to maintain and to produce upon request to the Commission certain records. Commission Regulations 1.31 and 1.35 required EPME to maintain and to produce "full, complete, and systematic records, together with all pertinent data and memoranda, of all transactions relating to its business of dealing in commodity futures, commodity options, and cash commodities."  In addition, Regulation 1.40 further requires that:  "[E]ach member of a contract market shall, upon request, furnish or cause to be furnished to the Commission a true copy of any letter, circular, telegram, or report published or given general circulation by such ... member which concerns crop or market information or conditions that affect or tend to affect the price of any commodity, and the true source of or authority for the information contained therein."

By failing to keep the required records, including records of what EPME relayed to the reporting firms, EPME violated Commission Regulations 1.31, 1.35 and 1.40.  As

discussed above, price and volume information affect or tend to affect the market price of natural gas, including futures prices as traded on the NYMEX.

## IV.

### FINDINGS OF VIOLATIONS

Based on the foregoing, the Commission finds that Respondent violated Sections 6(c), 6(d), and 9(a)(2) of the Act, 7 U.S.C. §§ 9, 13b, 13(a)(2) and 15 (2000), and Commission Regulations 1.31, 1.35 and 1.40, 17 C.F.R. §§ 1.31, 1.35 and 1.40 (2002).

## V.

### OFFER OF SETTLEMENT

Respondent has submitted an Offer of Settlement in which, without admitting or denying the allegations or the findings herein: acknowledges service of the Order; admits jurisdiction of the Commission with respect to the matters set forth in this Order and for any action or proceeding brought or authorized by the Commission based upon violations or for enforcement of the Order; waives service and filing of a complaint and notice of hearing, a hearing, all post-hearing procedures, judicial review by any court, any objection to the staff's participation in the Commission's consideration of the Offer, any claim of double jeopardy based on the institution of this proceeding or the entry of any order imposing a civil monetary penalty or other relief, and all claims which it may possess under the Equal Access to Justice Act, 5 U.S.C. § 504 (1994) and 28 U.S.C. § 2412 (1996), as amended by Pub. L. No. 104-21, §§ 231-32, 110 Stat. 862-63, and Part 148 of the Commission's Regulations, 17 C.F.R. §§ 148.1 *et seq.* (2002), relating to, or arising from, this action; stipulates that the record basis on which this Order is entered consists solely of this Order, including the findings in this Order; and consents to the Commission's issuance of this Order. Pursuant to the Offer of Settlement herein, EPME and El Paso both agree to entry of an Order, in which the Commission makes findings, including findings that EPME violated Sections 6(c), 6(d), and 9(a)(2) of the Act and violated Commission Regulations 1.31, 1.35 and 1.40 and orders that Respondent cease and desist from violating the provisions of the Act and Commission Regulations it has been found to have violated, and agrees to a civil monetary penalty of twenty million dollars ($20,000,000) and that it complies with the conditions and undertakings as set forth in this Order.

## VI.

Accordingly, IT IS HEREBY ORDERED THAT:

1.    EPME shall cease and desist from violating Sections 6(c), 6(d), and 9(a)(2) of the Act and Commission Regulations 1.31, 1.35 and 1.40;

6

2.     EPME and/or El Paso shall:

(a)   Jointly and severally, pay a civil monetary penalty of twenty million dollars ($20,000,000), hereafter "the Penalty." Respondent and/or El Paso shall pay the Penalty in accordance with the following terms:

(i)   Pay ten million dollars ($10,000,000) of the Penalty within five (5) business days of the entry of this Order and make such payment by electronic funds transfer to the account of the Commission at the United States Treasury or by certified check or bank cashier's check made payable to the Commodity Futures Trading Commission and addressed to Dennese Posey, or her successor, Division of Enforcement, Commodity Futures Trading Commission, 1155 21st Street, N.W., Washington, D.C. 20581, under cover of a letter that identifies the Respondent and the name and docket number of this proceeding. Copies of the cover letter and the form of payment shall be simultaneously transmitted to Gregory G. Mocek, Director, Division of Enforcement, Commodity Futures Trading Commission, 1155 21st Street, N.W., Washington, D.C. 20581, and to Rosemary Hollinger, Regional Counsel, 525 West Monroe Chicago, IL 60661;

(ii)   Pay ten million dollars ($10,000,000) of the Penalty within three (3) years of the entry of this order, plus post-judgment interest accruing from the date of this Order until the Penalty is paid in full, at the Treasury Bill rate prevailing on the date of this Order, pursuant to 28 U.S.C. § 1961(a).

If payment is not made in accordance with the requirements of this paragraph, the Respondent and El Paso shall be subject to further proceedings pursuant to Section 6(c) and Section 6(e)(2) of the Act, 7 U.S.C. § 9 and 9a(e)(2) (2001), for violating a Commission Order;

3.   Respondent and/or El Paso shall comply with the following conditions and undertakings as specified:

(a)   Cooperation With The Commission

Respondent and El Paso shall continue to cooperate fully and expeditiously with the Commission, and its staff, including the Division, in this proceeding and any investigation, civil litigation, or administrative matter related to the subject matter of this proceeding or any current or future Commission investigation relating to manipulation or false reporting to or from a price index. Respondent and El Paso agree to cooperate fully and expeditiously with the Division's ongoing efforts to discover documents and information related to reporting energy prices to energy reporting services. Respondent and El Paso agree that this undertaking includes the Respondent in this proceeding and any El Paso subsidiary or affiliate within its control. As part of such cooperation, Respondent and El Paso agree to comply fully, promptly, and truthfully to any inquiries or requests for information, including but not limited to: (1) requests for authentication of

7

documents; and (2) requests for any documents within Respondent's or El Paso's possession, custody, or control, including inspection and copying of documents. Respondent and El Paso further commit to producing their current (as of the date of the request) officers, directors, agents and employees, regardless of the individual's location, for interviews, depositions, and testimony at any administrative or judicial hearing related to the subject matter of this proceeding and to encourage them, to testify completely and truthfully at such proceeding. Respondent and El Paso also agree to assist the Division in locating and contacting any prior (as of the time of the request) officer, director, or employee of Respondent. Respondent and El Paso also agree that they will not undertake any act that would limit their ability to fully cooperate with the Commission. Respondent and El Paso designate Kenneth Raisler, Esq., of the Sullivan & Cromwell law firm to receive all requests for information pursuant to this undertaking. Should Respondent or El Paso seek to change the designated person to receive such requests, notice shall be given to the Division of such intention 14 days before it occurs. Any person designated to receive such request shall be located in the United States.

(b)    Public Statements

By neither admitting nor denying the findings of fact, Respondent and El Paso agree that neither they nor any of Respondent's or El Paso's agents or employees under their authority and control shall take any action or make any public statement denying, directly or indirectly, any findings or conclusions in the Order or creating, or tending to create, the impression that the Order is without factual or legal basis; provided, however, that nothing in this provision shall affect Respondent's and El Paso's: (i) testimonial obligations; or (ii) right to take factual or legal positions in other proceedings to which the Commission is not a party. Respondent and El Paso will undertake all steps necessary to assure that all of their agents and employees under their authority and control understand and comply with this agreement.

(c)    Miscellaneous Provisions

(i)    This Order shall inure to the benefit of and be binding on El Paso Corporation and Respondent's and El Paso's successors, assigns, beneficiaries and administrators.

(ii)    If Respondent or El Paso fail to comply with any of the conditions or undertakings of this Order, the Respondent and El Paso shall be subject to further proceedings pursuant to Section 6(c) and Section 6(e)(2) of the Act, 7 U.S.C. § 9 & 9a(e)(2) (2001), for violating a Commission Order.

By the Commission.

Jean A. Webb
Secretary of the Commission
Commodity Futures Trading Commission

Dated: March 26, 2003

8